COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Elder,
          Annunziata, Bumgardner, Frank, Humphreys, Clements,
          Agee, Felton and Kelsey
Argued at Richmond, Virginia


THOMAS MICHAEL HOLSAPPLE
                                          OPINION BY
v.   Record No. 3078-00-2       JUDGE ROBERT J. HUMPHREYS
                                        JANUARY 14, 2003
COMMONWEALTH OF VIRGINIA


                  UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
               Paul M. Peatross, Jr., Judge

        Charles L. Weber, Jr., for appellant.

        Steven A. Witmer, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


     This matter comes before the Court on a rehearing en banc

from a decision of a divided panel rendered July 9, 2002.  See

Holsapple v. Commonwealth, 38 Va. App. 480, 566 S.E.2d 210 (2002).

The panel affirmed Holsapple's conviction for fraudulently

obtaining an advance of payment for construction work to be

performed in the future, in violation of Code § 18.2-200.1.  In

reaching this determination, the panel affirmed the trial court's

rulings that 1) Code § 18.2-200.1 does not require proof of actual

notice; 2) Holsapple was not subject to a disability pursuant to

Code §§ 8.01-9 and 53.1-223; 3) the unsatisfactory performance

demonstrated on these facts amounted to a failure to perform under

Code § 18.2-200.1; 4) the evidence was sufficient, as a matter of law to establish the requisite intent; and 5) the evidence was sufficient, as a matter of law, to establish that Holsapple was the criminal agent.  For the reasons that follow, we likewise affirm the rulings of the trial court and Holsapple's conviction.

## I.  Background

In reviewing criminal convictions, the evidence must be viewed in the light most favorable to the Commonwealth.  Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).  "In so doing we must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

So viewed, the evidence presented at trial established that on June 8, 1993, the Virginia Department of Professional Occupational Regulation permanently revoked Holsapple's license as a building contractor in Virginia.  However, Holsapple continued to accept monetary advances to perform construction work. Holsapple accepted one such advance from Sandra Frazier and her brother-in-law.  Frazier's home had burned in 1998.  Subsequently, she and Calvin Frazier, her brother-in-law, entered into a verbal

agreement wherein Calvin agreed to install a modular home in place of Frazier's burned home. On May 12, 1998, Calvin contracted with Doug Currier, doing business as Star Bright Construction, to build a foundation for the installation of the "double-wide" modular home. Holsapple, who worked as manager and agent for Star Bright Construction, was present when the contract was entered into, but Currier signed the contract and was Calvin's contact during the course of the project. Calvin made a $6,000 payment for the construction of the foundation to Star Bright Construction on the date the contract was signed. He paid the balance on June 2, 1998.

Although Calvin had paid for the work, in July or August of 1998, Holsapple approached Frazier and advised her that there was an outstanding balance of $1,100 for his work on the foundation. He told her that he would place a lien on her property if she did not pay the outstanding amount. In addition, he and Currier told her that the modular home Calvin was installing was poorly constructed. They offered to take over the construction, tear down the existing structure, and provide her with a "stick-built" home. Frazier paid the $1,100 and agreed to consider their offer.

After receiving several phone calls from Currier and Holsapple concerning their offer, Frazier finally contracted with Currier on August 5, 1998. Both Holsapple and Currier insisted that the deposit for the work be paid in cash. Holsapple determined the amount needed was $15,000. Frazier paid this

amount to Currier that same day. Holsapple wrote "received of Sandy Frazier $15,000 in cash contracts for home" on the Proposal and Acceptance Form, which the two men used during the course of their business.

On August 6, 1998, Holsapple and Currier demanded and received an additional $9,000 from Frazier. Holsapple wrote the receipt for the amount, and Currier signed it. On August 10, 1998, Holsapple and Currier requested and received another $10,800 to install a well and a covered front porch on the home.

In addition, Frazier paid $7,500.05, on an uncertain date, for roof trusses and block work. The Proposal and Acceptance Form, signed by Currier, read, in relevant part, as follows:

> WE HEREBY SUBMIT SPECIFICATIONS AND
> ESTIMATES FOR:
>
> I propose to order one set of House truss
> [sic] 5/12 pitch for A [sic] house 26 ft[.]
> wide by 50 ft[.] Long [sic] with 12 in[.]
> over[-]hang on front and back of house[.]
>
> Total Cost             $3,745.00
> Bal[.] on Block Work   $1,150.00
> Received in Cash       $4,885
>
> *     *     *     *     *     *     *
>
> WE PROPOSE hereby to furnish material and
> labor – complete in accordance with above
> specifications for the sum of:
>
> Bal[.] for Rafters [sic] will be Refunded
> [sic] if other Rafters [sic] are
> installed[.]
>
> $_____

> Payment to be made:  Pd[.] Total [sic]
> $7,500.05 in cash[.]

During these transactions, Frazier dealt primarily with Holsapple.  Holsapple always determined the amounts that were due, but Frazier paid the monies to Currier at Holsapple's direction. The workers on site were paid in cash by Holsapple.  Holsapple purchased the necessary materials, and Holsapple generally did all of the driving, including transporting Currier to and from the site.

By August 31, 1998, Holsapple was incarcerated at the Albemarle-Charlottesville Regional Jail for a conviction on an unrelated matter.[1]  Holsapple actually left the job site on August 15, 1998, when the trial judge in the unrelated matter denied his request for work-release to continue working on the project. Currier and other workers continued the construction for a few months, until Currier was also incarcerated for a conviction on an unrelated matter.  At that point, construction came to a halt, with the exception of a small amount of work that Currier completed on the project once he was released from his incarceration.

In October of 1998, the construction was inspected by Albemarle County Building Inspector David Cook and by Frank Marshall, a private contractor.  Cook and Marshall determined that

---

[1] Holsapple presented evidence that he was released from incarceration on July 2, 1999.

- 5 -

the house was "uninhabitable," due to faulty workmanship. Among other things, Marshall observed the roof trusses were not secured properly. Marshall testified, "[t]hey probably had – I probably pulled out ten nails out of twenty-six (26) trusses. It wasn't secured to the walls."

On October 23, 1998, Frazier sent a letter to Holsapple at the Albemarle-Charlottesville Regional Jail, demanding return of her money. Frazier sent an identical letter to Currier. Both letters were sent by certified mail, return receipt requested. Neither Currier nor Holsapple returned the funds.

Based on these facts, the trial court found Holsapple guilty of construction fraud, finding:

> So I think this case boils down to the thirty-seven hundred and forty five dollars ($3,745) for the trusses, because the eleven hundred and fifty dollars ($1,150) appears from the evidence to be a representation of money due for work that was performed prior to August 5th. I mean Mr. Frazier testified that was completed by June 2nd or something of that nature. So, I don't see where the eleven fifty is for future work to be performed, which is under this statute . . . . So it boils down to the thirty-seven forty-five. At the time that Mr. Holsapple said to Ms. Frazier, and this is sometime early on in the contractual relations with the parties on or about August 5, 6, or 7, that I need thirty-seven forty-five for trusses, and he writes it out in his own handwriting as to what kind of trusses he needs, length, width, etcetera, and the price is thirty-seven forty-five. Not some round figure, but thirty-seven forty-five. And then if other trusses are used or other rafters used, there will be a

refund. . . . He told Ms. Frazier how much he needed, he was present when the money was attempted to be handed to him and he told Mr. Currier who took it, he is represented as the agent of the company and general manager and the Court finds he was the person under the statute who received the money jointly with Mr. Currier. . . . I'm finding that the thirty-seven forty-five was a fraudulent intent representation of I need this money and it was only nine eighty-three that was paid.  There was a promise to perform construction in the future.  There was a failure to perform the promise, he failed to refund the money.  He had an opportunity to do it between August 6th and August 31st.  The truss work was not performed in a satisfactory manner, it was only partially performed. . . . And on the question of failure to return, there was a demand for the return of money through the letter, it was not returned within fifteen (15) days.  The letter was sent by certified mail, return receipt.  I understand [Holsapple's] argument, but the letter was addressed to Starbright Construction and Mr. Holsapple was agent and general manager and it was sent to the last known address, which was the complex.  There is no evidence he was in jail on a felony charge so that he was a person under a disability for having been convicted of a felony.  And I find that element of the statute has been complied with, so I find him guilty as charged under the indictment.

## II.  Notice

Code § 18.2-200.1 provides as follows:

If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property, or any other improvements to such real property, including horticulture, nursery or forest products, and fail or

- 7 -

refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

As we held in Klink v. Commonwealth, 12 Va. App. 815, 407 S.E.2d 5 (1991), this statute requires proof of the following elements:

(1) obtaining an advance of money from another person, (2) a fraudulent intent at the time the advance is obtained, (3) a promise to perform construction or improvement involving real property, (4) a failure to perform the promise, and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or his address listed in the contract.

12 Va. App. at 818, 407 S.E.2d at 7.

Holsapple first contends the Commonwealth failed to prove he received notice of Frazier's letter demanding repayment of the funds advanced. However, Holsapple does not contest the Commonwealth's evidence that Frazier mailed the notice, by certified mail, return receipt requested, to Holsapple's last known address.

We recognize that "[a] criminal statute, such as Code § 18.2-200.1, must be strictly construed" against the Commonwealth. Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991). We further recognize that "the notice requirement of the statute [is] material." Id. Nevertheless, the

- 8 -

plain language of the statute simply does not require a showing of actual receipt.

Holsapple argues, relying on Rinkov v. Commonwealth, 213 Va. 307, 191 S.E.2d 731 (1972), that "the Commonwealth is required to produce evidence not only of the mailing [of the notice], but also of its receipt."  The Supreme Court of Virginia indeed held in Rinkov that, in order for the statutory presumption of intent to defraud to arise under the bad check statute, Code § 18.2-183,

> the notice to be given defendant must have been mailed by certified or registered mail and evidenced by return receipt. Manifestly the purpose of requiring the notice to be sent by registered or certified mail, and evidenced by a receipt, is to have not only evidence of the required mailing to the defendant, but also evidence that the notice was either received in person by the defendant (as would be shown by his signature on the return receipt), or that the letter did in fact reach the last known address of the defendant and was there accepted by someone at that address. Otherwise there would be no reason for the statute to require the notice be sent by registered or certified mail and evidenced by a return receipt.

213 Va. at 310, 191 S.E.2d at 733.  However, Code § 6.1-117 (now Code § 18.2-183) specifically required that notice be "mailed by certified or registered mail, evidenced by return receipt, to the last known address of the maker."  (Emphasis added).  In fact, the evidence in Rinkov's trial proved that although the notice was properly mailed, it was returned as unclaimed. Rinkov, 213 Va. at 308, 191 S.E.2d at 732.  Thus, Rinkov is

- 9 -

readily distinguishable from the case at bar. The statute here requires nothing more than proof that the notice was "sent by certified mail, return receipt requested, to [defendant's] last known address or the address listed in the contract." Code § 18.2-200.1. As the Supreme Court of Virginia stated in Jimenez:

> We think it clear that the General Assembly meant what it said, i.e., that a person accused of violating the statute cannot be convicted unless the evidence proves beyond a reasonable doubt, inter alia, that the accused "fail[ed] to return [the] advance within fifteen days of a request to do so," and that the request was "sent by certified mail, return receipt requested."

Jimenez, 241 Va. at 251, 402 S.E.2d at 681 (holding that actual notice of request does not satisfy the requirements of Code § 18.2-200.1).

Indeed, "[w]here a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation." Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992). "'Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied.'" Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). If the legislature intended to require a showing of actual receipt as it did in Code § 18.2-183, it presumably would

have used language to do so.  Accordingly, we find that the trial judge had sufficient evidence to prove beyond a reasonable doubt that Frazier requested return of her advanced payments.

III.  Appointment of a Guardian ad Litem or Committee

Holsapple next contends the trial court erred in finding he was not a "person under a disability" as defined by Code § 8.01-2(6)(a), and as such, that Holsapple was not entitled to an appointment of a guardian ad litem pursuant to Code § 8.01-9, or a committee, pursuant to Code § 53.1-223, once Frazier forwarded the notice to him while he was incarcerated.[2]  Thus, Holsapple argues

_____

[2] Code § 8.01-9 provided as follows, in relevant part, at the time Frazier sent the notice:

> A.  A suit wherein a person under a disability is a party defendant shall not be stayed because of such disability, but the court in which the suit is pending, or the clerk thereof, shall appoint a discreet and competent attorney-at-law as guardian ad litem to such defendant, whether the defendant has been served with process or not. . . .

> B.  Notwithstanding the provisions of subsection A or the provisions of any other law to the contrary, in any suit wherein a person under a disability is a party defendant and is represented by an attorney-at-law duly licensed to practice in this Commonwealth, who shall have entered of record an appearance for such person, no guardian ad litem need be appointed for such person unless the court determines that the interests of justice require such appointment; or unless a statute applicable to such suit expressly requires an answer to be filed by a guardian ad litem.  The court may, in its discretion, appoint the attorney

- 11 -

he was denied fundamental due process rights as he was not properly notified of the nature of the "suit" against him. However, Holsapple bases his claim on his contention that the trial court erroneously found Holsapple's incarceration was not due to a felony conviction. Indeed, the trial court held that "there [was] no evidence [Holsapple] was in jail on a felony charge so that he was a person under a disability for having been convicted of a felony." The record demonstrates Holsapple failed to introduce any evidence concerning the nature of his 1998-1999 incarceration at trial.[3] Furthermore, these sections apply only to civil proceedings. <u>See</u> Code § 8.01-2.

---

> of record for the person under a disability as his guardian ad litem, in which event the attorney shall perform all the duties and functions of guardian ad litem.

> Any judgment or decree rendered by any court against a person under a disability without a guardian ad litem, but in compliance with the provisions of this subsection B, shall be as valid as if the guardian ad litem had been appointed.

Code § 53.1-223 provided:

> No action or suit on any claim or demand, except actions to establish a parent and child relationship between a child and a prisoner and actions to establish a prisoner's child support obligation, shall be instituted against a prisoner after judgment of conviction and while he is incarcerated, except through his committee.

[3] Holsapple's unsuccessful attempt to re-open the case to submit evidence establishing his disability was unsuccessful,

Accordingly, we find no error in the trial court's determination that there was no evidence to establish Holsapple was a "person under a disability," or that he was not entitled to an appointment of a guardian ad litem, or a committee, for purposes of notice.

## IV. Failure to Perform

Holsapple next argues that the trial court erred in finding he failed to complete the construction as promised. Holsapple contends the trial court erred in finding that poor workmanship amounted to a "failure to perform" under the statute. Further, he states that the trial court erred in finding the workmanship was poor because it failed to comply with building codes. He also argues that Currier was the individual responsible for the poor workmanship, as opposed to him, as he was incarcerated at the time the work was performed and in any event, he was merely Currier's employee. In the alternative, Holsapple contends he was "legally justified" in failing to complete the construction on the truss work because he was sentenced to prison in August 1998, and by August 15, 1998, the trial court had denied his request for work-release to complete the construction.

We find no merit in Holsapple's argument that the trial court's finding, "Holsapple failed to perform on the promise

---

and the conviction order he attached to his Amended Motion to Set Aside the Verdict does not constitute evidence.

- 13 -

because the workmanship was unsatisfactory seems inconsistent with the plain language of the statutes." Indeed, we have found

> [i]t is apparent from reason and common sense that construction fraud can occur despite the fact that a builder or contractor begins to perform on the contract. . . . The relevant question is whether a builder or contractor obtained an advance based upon future work promised with a fraudulent intent not to perform <u>or to perform only partially</u>, <u>not whether the contractor had performed work for which he was paid</u>.

Rader v. Commonwealth, 15 Va. App. 325, 332, 423 S.E.2d 207, 212 (1992) (emphasis added).

Common sense would likewise dictate that a performance of construction which is so poor as to render a structure unsafe or uninhabitable could, under the appropriate circumstances, constitute the failure to perform the contractual promise at issue. Here, the evidence demonstrated that the truss work was done so poorly that the home was simply not safe to live in. Accordingly, while we do not hold that poor workmanship <u>per</u> <u>se</u> constitutes a failure to perform the contractual promise, on these facts we find no error in the trial court's determination that the faulty workmanship in this case constituted a failure to perform within the meaning of the statute.

Further, we find no error in the trial court's consideration of building code violations in determining that the workmanship was faulty. "Evidence which 'tends to cast any light upon the

- 14 -

subject of the inquiry' is relevant." <u>Cash v. Commonwealth</u>, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citations omitted). "The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue." <u>Wise v. Commonwealth</u>, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988). "Admissibility of evidence is an issue left to the discretion of the trial court, and unless the appellant proves an abuse of discretion, no error will lie." <u>Rader</u>, 15 Va. App. at 331, 423 S.E.2d at 211. In this case, evidence of the building code violations was relevant and probative because it demonstrated the poor quality of the workmanship. Therefore, the violations provided circumstantial evidence that the fact finder could consider to prove the necessary elements under the statute, and the trial court did not abuse its discretion in admitting such evidence.

Holsapple next contends he was not responsible for the work on the trusses, because he was incarcerated at the time the trusses were installed. However, Frazier testified that the "trusses were on" and that the work was "pretty far along" at the point Holsapple left the site due to his incarceration. The fact that Robert Johnson, an employee of Currier's who worked on construction of the home, testified that the roof was not on when Holsapple left, is of no consequence. Indeed, it is within the province of the trial court to "evaluate[] the credibility of witnesses, resolve[] the conflicts in their testimony, and weigh[]

the evidence as a whole.  Its finding is entitled to the same weight on appeal as that accorded a factual finding by a jury and will not be disturbed unless it is plainly wrong." Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984).  Here, the trial court believed Frazier's testimony that the construction involving the trusses was complete at the time Holsapple was incarcerated, and we find no evidence which would suggest that the trial court's finding in this regard was plainly wrong.

Holsapple also argues he was merely an employee of Currier. Thus, Currier was responsible for the poor workmanship, not Holsapple.  Nevertheless, the trial court found that Holsapple represented himself to Frazier as Currier's agent and general manager.  Indeed, Holsapple was just as involved in the dealings with Frazier, if not more involved, than Currier.  Accordingly, we find no error in the trial court's determination that Holsapple was jointly responsible for the representations made, and the work that was performed.

## V.  Fraudulent Intent

Holsapple further contends the Commonwealth failed to establish evidence of his fraudulent intent at the time he accepted the advance from Frazier.  He argues that the contract concerning the trusses states the amount received was for materials, as well as labor, and that since there was no evidence presented concerning the cost of labor, the court could not infer his fraudulent intent in obtaining more money than the actual cost

of the materials.  Holsapple also contends there was no evidence he bought the trusses or that he knew their actual cost.

"Whether a fraudulent intent existed at the time the advance was obtained depends upon the circumstances of the case."  Klink, 12 Va. App. at 819, 407 S.E.2d at 8.  "The defendant's conduct and representations must be examined in order to determine if a fraudulent intent existed at the time."  Id.

We are mindful, in resolving this issue, that "where the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)).  "However, '[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'"  Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 526-27, 351 S.E.2d 598, 600 (1986)).

Applying these principles to the evidence before us, we hold the evidence was sufficient to prove beyond a reasonable doubt that Holsapple violated Code § 18.2-200.1.  Taken together, Holsapple's representations and conduct demonstrated that he

obtained the advanced funds with the fraudulent intent not to complete the project. Indeed, contrary to Holsapple's argument, the contract at issue states an estimate to "order one set of house truss[es] . . . ." It also states that any excess will be "refunded if other rafters are installed." Although the pre-printed form indicates that the total requested includes labor as well as materials, the line below that particular statement was not filled in, thus indicating that the cost of labor was not included in the advanced amount.

Further, the evidence established that Holsapple was the individual who estimated the amounts necessary for the materials and labor and that he bought all of the required materials. Moreover, at the time Holsapple obtained the advance from Frazier, he knew he would have to report to jail within a matter of days. In addition, the trial court had before it evidence that Holsapple demanded $1,100 from Frazier for work he had already performed and had been paid in full. The trial court also had before it evidence concerning the apparent misuse of the sliding glass door, and the problems concerning the licensure of both he and Currier. Thus, we find no error in the trial court's determination that the circumstances, viewed as a whole, demonstrated Holsapple's fraudulent intent at the time he obtained the advanced funds from Frazier.

IV.  Receipt of Funds

Finally, Holsapple maintains the trial court erred in finding he received the advanced payments.  However, viewed in the light most favorable to the Commonwealth, the evidence demonstrated that Holsapple at all times represented himself to be the agent and general manager of Star Bright Construction and although he did not physically accept the money from Frazier, he told her what amounts would be needed and he was present when she made the payments, even directing her to give the money to Currier.  In addition, it is clear that Holsapple had access to the funds, as he paid the site workers with the cash.  Thus, we find no error in the trial court's determination that Holsapple received the funds jointly with Currier, within the meaning of Code § 18.2-200.1. See Snyder v. Commonwealth, 202 Va. 1009, 1015, 121 S.E.2d 452, 457 (1961) ("We have, . . . in many cases reaffirmed the proposition that if a person is present at the commission of a crime, inciting, encouraging, advising or assisting in the act done, he is deemed to be an aider and abettor, and is liable as principal.").

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Benton, J., with whom Fitzpatrick, C.J., and Elder, J., join, dissenting.

In pertinent part, Code § 18.2-200.1 provides as follows:

> If any person obtain from another an advance of money, . . . with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money . . . if he fails to return such advance within fifteen days of a request to do so <u>sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract</u>.

(Emphasis added). Because it is a criminal statute, "Code § 18.2-200.1, must be strictly construed . . . [to mean that] the notice requirement of the statute [is] a material element of the offense charged." <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991). Thus, to sustain a conviction, the evidence must prove "beyond a reasonable doubt" that the notice requirement of the statute was satisfied. <u>Id.</u>

The majority distinguishes the notice requirement of this statute from a similar notice requirement in Code § 6.1-117 (now Code § 18.2-183) on the basis that the latter statute expressly requires that the certified or registered mail be "evidenced by return receipt." I believe the majority's distinction is nonessential and that the Supreme Court's holding in <u>Rinkov v. Commonwealth</u>, 213 Va. 307, 191 S.E.2d 731 (1972), which interprets the notice provision of Code § 6.1-117, is binding on

our application of Code § 18.2-200.1 to this case.  Therefore, I dissent.

Code § 6.1-117 (now Code § 18.2-183) allowed proof of refusal of a check for insufficient funds to be "prima facie evidence of intent to defraud."  The statute also provided that "[n]otice mailed by certified . . . mail, evidenced by return receipt, to the last known address of the maker . . . shall be deemed sufficient . . . to notice having been received by the maker."  Code § 6.1-117 (now Code § 18.2-183).  In Rinkov, the Supreme Court construed the statute and held as follows:

> Manifestly, the purpose of requiring the notice to be sent by registered or certified mail, and evidenced by a receipt, is to have not only evidence of the required mailing to the defendant, but also evidence that the notice was either received in person by the defendant (as would be shown by his signature on the return receipt), or that the letter did in fact reach the last known address of the defendant and was there accepted by someone at that address. Otherwise there would be no reason for the statute to require the notice be sent by registered or certified mail and evidenced by a return receipt.

213 Va. at 310, 191 S.E.2d at 733.  Essentially, the Rinkov holding explains that the purpose of requiring a return receipt is to provide documentary proof that the notice was mailed and was received by the accused or by someone at the accused's last address.  Id.

In the case of a prosecution under Code § 18.2-200.1, the Commonwealth must prove the statutory elements of "fraudulent

- 21 -

intent . . . and fail[ing] or refus[ing] to perform [a prior] promise, and also fail[ing] to substantially make good [an] advance [of money]." Code § 18.2-200.1 (emphasis added). Before the accused "shall be deemed guilty of the larceny" as provided by the statute, the Commonwealth must prove beyond a reasonable doubt the accused "fail[ed] to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested." Id. As the Supreme Court observed in Rinkov, and as applicable here, the language of the statute creates "a rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent." 213 Va. at 309, 191 S.E.2d at 733. As the Court further noted in Rinkov, a return receipt is not a necessity created by the postal service for certified mailings but, rather, is a statutory requirement that reflects a legislative "reason for the statute." Id. at 310, 191 S.E.2d at 733. This statutory requirement, that the request be "sent by certified mail, return receipt requested," provides clear legislative intent that the Commonwealth must prove by the return receipt that the request was sent and that someone at the accused's last known address received it. To prove the statutory requirement that the accused "fail[ed] to return such advance within fifteen days of a request to do so," Code § 18.2-200.1, and to invoke the statutory presumption, the Commonwealth must prove, by means of

- 22 -

the return receipt, the mailing of that request.  For that is the method required by statute.

A long-standing principle of statutory interpretation holds that words should be given their ordinary meaning unless otherwise defined.  See Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982).  It is generally understood that the request of a return receipt for certified mail provides the means to confirm by signatures that the intended recipient or someone at the recipient's address actually received the item. In this case, the Commonwealth only proved that Sandra Frazier sent a request to Thomas Holsapple by certified mail return receipt requested.  The Commonwealth did not introduce a copy of the return receipt, which would have evidenced both the mailing and whether the letter was received.  Under these circumstances, I would hold, as the Court held in Rinkov, that where a statute requires a mailing and a return receipt, the Commonwealth must prove the return receipt so as

> to have not only evidence of the required
> mailing . . . but also evidence that the
> notice was either received in person by the
> defendant (as would be shown by his
> signature on the return receipt), or that
> the letter did in fact reach the last known
> address of the defendant and was there
> accepted by someone at that address.

213 Va. at 310, 191 S.E.2d at 733.

The Commonwealth presented no evidence that Holsapple actually received the letter or that anyone received the letter

- 23 -

on Holsapple's behalf. Instead, the Commonwealth relies on Robertson v. Commonwealth, 12 Va. App. 854, 856-57, 406 S.E.2d 417, 418-19 (1991), asserting that the law presumes that post office clerks and prison officials have properly discharged their official duties and, therefore, the burden was on Holsapple to prove he did not receive the letter. In Robertson and its predecessors, we applied this presumption in determining whether, for evidentiary purposes, the chain of custody was satisfied. See also Smith v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). In determining such evidentiary matters, we have held that the Commonwealth must prove by "reasonable assurance" that the evidence presented at trial is in the same condition as it was when obtained by the police. Robertson, 12 Va. App. at 857, 406 S.E.2d at 419. Although this presumption satisfies the "reasonable assurance" standard for evidentiary matters, it is, however, insufficient to satisfy the constitutional requirement that the Commonwealth prove beyond a reasonable doubt each essential element of an offense. See Jackson v. Virginia, 443 U.S. 307, 316 (1979); Powell v. Commonwealth, 31 Va. App. 167, 172, 521 S.E.2d 787, 790 (1999) (holding that "the burden is on the Commonwealth to establish . . . element [of crime] by proof beyond a reasonable doubt"). Therefore, I would hold that the Commonwealth failed to prove beyond a reasonable doubt the notice requirement, which is an element of the offense under Code § 18.2-200.1.

- 24 -

In sum, I believe the majority's holding contradicts the Supreme Court's holding in <u>Rinkov</u>. I would hold that <u>Rinkov</u> binds our construction of the statutory required notice and, therefore, I would hold that the evidence is insufficient to invoke the terms of the statute "deem[ing]" Holsapple guilty of larceny under Code § 18.2-200.1. Accordingly, I would reverse the conviction and dismiss the indictment.

Felton, J., with whom Frank, J. joins, dissenting.

I join the dissent in its finding that the notice requirement under Code § 18.2-200.1 was not satisfied by the evidence presented in this case.  In my view, however, I would find that in addition to actual delivery to the addressee or to a person at that address, proof of an attempt to deliver the notice, and proof that, after that attempt, the mail remained unclaimed would also satisfy the notice requirement.

Accordingly, I would reverse the conviction and dismiss the indictment.

                                    Tuesday          3rd

          September, 2002.


Thomas Michael Holsapple,                              Appellant,

  against        Record No. 3078-00-2
                 Circuit Court No. CR-13,771

Commonwealth of Virginia,                              Appellee.


                  Upon a Petition for Rehearing En Banc

                        Before the Full Court


          On July 23, 2002 came the appellant, by retained

counsel, and filed a petition praying that the Court set aside

the judgment rendered herein on July 9, 2002, and grant a

rehearing en banc thereof.

          On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on July 9, 2002

is stayed pending the decision of the Court en banc, and the

appeal is reinstated on the docket of this Court.

          The parties shall file briefs in compliance with Rule

5A:35. The appellant shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter. It is further ordered that

the appellant

                              - 27 -

shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

                    A Copy,

                         Teste:

                                   Cynthia L. McCoy, Clerk

                              By:

                                   Deputy Clerk

Present:  Judges Benton, Annunziata and Humphreys
Argued at Richmond, Virginia


THOMAS MICHAEL HOLSAPPLE

                                        OPINION BY
v.    Record No. 3078-00-2      JUDGE ROBERT J. HUMPHREYS
                                         JULY 9, 2002
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

          Charles L. Weber, Jr., for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Randolph A. Beales, Attorney General, on
          brief), for appellee.


     Thomas Michael Holsapple appeals his conviction, after a
bench trial, for fraudulently obtaining an advance of payment
for construction work to be performed in the future, in
violation of Code § 18.2-200.1.  Holsapple contends the trial
court erred 1) in concluding that Code § 18.2-200.1 does not
require proof of actual notice; 2) in finding Holsapple was not
subject to a disability pursuant to Code §§ 8.01-9 and 53.1-223;
3) in finding the evidence sufficient to show that Holsapple
intentionally failed to perform the construction; 4) in finding
unsatisfactory performance amounted to a failure to perform
under Code § 18.2-200.1; 5) in finding the difference between
the contract price and cost of certain materials provided
sufficient evidence of the necessary fraudulent intent under

- 29 -

Code § 18.2-200.1; and, 6) in finding the evidence sufficient to prove that Holsapple was the criminal agent where he was an employee of the contractor and never received or possessed the advanced funds. For the reasons that follow, we affirm Holsapple's conviction.

## I. Background

In reviewing criminal convictions, the evidence must be viewed in the light most favorable to the Commonwealth.[4] "In so doing we must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"[5]

So viewed, the evidence presented at trial established that on June 8, 1993, the Virginia Department of Professional Occupational Regulation permanently revoked Holsapple's license as a building contractor in Virginia. However, Holsapple continued to accept monetary advances to perform construction work. Holsapple accepted one such advance from Sandra Frazier and her brother-in-law. Frazier's home had burned in 1998. Subsequently, she and Calvin Frazier, her brother-in-law,

---

[4] Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

[5] Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

entered into a verbal agreement wherein Calvin agreed to install a modular home in place of Frazier's burned home. On May 12, 1998, Calvin contracted with Doug Currier, doing business as Star Bright Construction, to build a foundation for the installation of the "double-wide" modular home. Holsapple, who worked as manager and agent for Star Bright Construction, was present when the contract was entered into, but Currier signed the contract and was Calvin's contact during the course of the project. Calvin made a $6,000 payment for the construction of the foundation to Star Bright Construction on the date the contract was signed. He paid the balance on June 2, 1998.

Although Calvin had paid for the work, in July or August of 1998, Holsapple approached Frazier and advised her that there was an outstanding balance of $1,100 for his work on the foundation. He told her that he would place a lien on her property if she did not pay the outstanding amount. In addition, he and Currier told her that the modular home Calvin was installing was poorly constructed. They offered to take over the construction, tear down the existing structure, and provide her with a "stick-built" home. Frazier paid the $1,100 and agreed to consider their offer.

After receiving several phone calls from Currier and Holsapple concerning their offer, Frazier finally contracted with Currier on August 5, 1998. Both Holsapple and Currier insisted that the deposit for the work be paid in cash.

- 31 -

Holsapple determined the amount needed was $15,000.  Frazier paid this amount to Currier that same day.  Holsapple wrote "received of Sandy Frazier $15,000 in cash contracts for home" on the Proposal and Acceptance Form, which the two men used during the course of their business.

On August 6, 1998, Holsapple and Currier demanded and received an additional $9,000 from Frazier.  Holsapple wrote the receipt for the amount, and Currier signed it.  On August 10, 1998, Holsapple and Currier requested and received another $10,800 to install a well and a covered front porch on the home.

In addition, Frazier paid $7,500.05, on an uncertain date, for roof trusses and block work.  The Proposal and Acceptance Form, signed by Currier, read, in relevant part, as follows:

> WE HEREBY SUBMIT SPECIFICATIONS AND
> ESTIMATES FOR:
>
> I propose to order one set of House truss
> [sic] 5/12 pitch for A [sic] house 26 ft[.]
> wide by 50 ft[.] Long [sic] with 12 in[.]
> over[-]hang on front and back of house[.]
>
> Total Cost            $3,745.00
> Bal[.] on Block Work  $1,150.00
> Received in Cash      $4,885
>
> *     *     *     *     *     *     *
>
> WE PROPOSE hereby to furnish material and
> labor – complete in accordance with above
> specifications for the sum of:
>
> Bal[.] for Rafters [sic] will be Refunded
> [sic] if other Rafters [sic] are
> installed[.]
>
> $_____

> Payment to be made:  Pd[.] Total [sic]
> $7,500.05 in cash[.]

During these transactions, Frazier dealt primarily with Holsapple.  Holsapple always determined the amounts that were due, but Frazier paid the monies to Currier at Holsapple's direction.  The workers on site were paid in cash by Holsapple.  Holsapple purchased the necessary materials, and Holsapple generally did all of the driving, including transporting Currier to and from the site.

By August 31, 1998, Holsapple was incarcerated at the Albemarle-Charlottesville Regional Jail for a conviction on an unrelated matter.[6]  Holsapple actually left the job site on August 15, 1998, when the trial judge in the unrelated matter denied his request for work-release to continue working on the project.  Currier and other workers continued the construction for a few months, until Currier was also incarcerated for a conviction on an unrelated matter.  At that point, construction came to a halt, with the exception of a small amount of work that Currier completed on the project once he was released from his incarceration.

In October of 1998, the construction was inspected by Albemarle County Building Inspector David Cook and by Frank Marshall, a private contractor.  Cook and Marshall determined

---

[6] Holsapple presented evidence that he was released from incarceration on July 2, 1999.

that the house was "uninhabitable," due to faulty workmanship.

Among other things, Marshall observed the roof trusses were not

secured properly. Marshall testified, "[t]hey probably had – I

probably pulled out ten nails out of twenty-six (26) trusses.

It wasn't secured to the walls."

On October 23, 1998, Frazier sent a letter to Holsapple at

the Albemarle-Charlottesville Regional Jail, demanding return of

her money. Frazier sent an identical letter to Currier. Both

letters were sent by certified mail, return receipt requested.

Neither Currier nor Holsapple returned the funds.

Based on these facts, the trial court found Holsapple

guilty of construction fraud, finding:

> So I think this case boils down to the
> thirty-seven hundred and forty five dollars
> ($3,745) for the trusses, because the eleven
> hundred and fifty dollars ($1,150) appears
> from the evidence to be a representation of
> money due for work that was performed prior
> to August 5th. I mean Mr. Frazier testified
> that was completed by June 2nd or something
> of that nature. So, I don't see where the
> eleven fifty is for future work to be
> performed, which is under this
> statute. . . . So it boils down to the
> thirty-seven forty-five. At the time that
> Mr. Holsapple said to Ms. Frazier, and this
> is sometime early on in the contractual
> relations with the parties on or about
> August 5, 6, or 7, that I need thirty-seven
> forty-five for trusses, and he writes it out
> in his own handwriting as to what kind of
> trusses he needs, length, width, etcetera,
> and the price is thirty-seven forty-five.
> Not some round figure, but thirty-seven
> forty-five. And then if other trusses are
> used or other rafters used, there will be a
> refund. . . . He told Ms. Frazier how much

he needed, he was present when the money was attempted to be handed to him and he told Mr. Currier who took it, he is represented as the agent of the company and general manager and the Court finds he was the person under the statute who received the money jointly with Mr. Currier. . . . I'm finding that the thirty-seven forty-five was a fraudulent intent representation of I need this money and it was only nine eighty-three that was paid. There was a promise to perform construction in the future. There was a failure to perform the promise, he failed to refund the money. He had an opportunity to do it between August 6th and August 31st. The truss work was not performed in a satisfactory manner, it was only partially performed. . . . And on the question of failure to return, there was a demand for the return of money through the letter, it was not returned within fifteen (15) days. The letter was sent by certified mail, return receipt. I understand [Holsapple's] argument, but the letter was addressed to Starbright Construction and Mr. Holsapple was agent and general manager and it was sent to the last known address, which was the complex. There is no evidence he was in jail on a felony charge so that he was a person under a disability for having been convicted of a felony. And I find that element of the statute has been complied with, so I find him guilty as charged under the indictment.

## II.  Notice

Code § 18.2-200.1 provides as follows:

If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property, or any other improvements to such real property, including horticulture, nursery or forest products, and fail or refuse to perform such promise, and also

- 35 -

> fail to substantially make good such
> advance, he shall be deemed guilty of the
> larceny of such money, merchandise or other
> thing if he fails to return such advance
> within fifteen days of a request to do so
> sent by certified mail, return receipt
> requested, to his last known address or to
> the address listed in the contract.

As we held in Klink v. Commonwealth, 12 Va. App. 815, 407 S.E.2d 5 (1991), this statute requires proof of the following elements:

> (1) obtaining an advance of money from
> another person, (2) a fraudulent intent at
> the time the advance is obtained, (3) a
> promise to perform construction or
> improvement involving real property, (4) a
> failure to perform the promise, and (5) a
> failure to return the advance "within
> fifteen days of a request to do so by
> certified mail" to the defendant's last
> known address or his address listed in the
> contract.[7]

Holsapple first contends the Commonwealth failed to prove he received notice of Frazier's letter demanding repayment of the funds advanced. However, Holsapple does not contest the Commonwealth's evidence that Frazier mailed the notice, by certified mail, return receipt requested, to Holsapple's last known address.

We recognize that "[a] criminal statute, such as Code § 18.2-200.1, must be strictly construed" against the Commonwealth.[8] We further recognize that "the notice requirement

---

[7] 12 Va. App. at 818, 407 S.E.2d at 7.

[8] Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991).

of the statute [is] material."[9]  Nevertheless, the plain

language of the statute simply does not require a showing of

actual receipt.

Holsapple argues, relying on Rinkov v. Commonwealth, 213

Va. 307, 191 S.E.2d 731 (1972), that "the Commonwealth is

required to produce evidence not only of the mailing [of the

notice], but also of its receipt."  The Supreme Court of

Virginia indeed held in Rinkov that, in order for the statutory

presumption of intent to defraud to arise under the bad check

statute, Code § 18.2-183,

> the notice to be given defendant must have
> been mailed by certified or registered mail
> and evidenced by return receipt. Manifestly
> the purpose of requiring the notice to be
> sent by registered or certified mail, and
> evidenced by a receipt, is to have not only
> evidence of the required mailing to the
> defendant, but also evidence that the notice
> was either received in person by the
> defendant (as would be shown by his
> signature on the return receipt), or that
> the letter did in fact reach the last known
> address of the defendant and was there
> accepted by someone at that address.
> Otherwise there would be no reason for the
> statute to require the notice be sent by
> registered or certified mail and evidenced
> by a return receipt.[10]

However, Code § 6.1-117 (now Code § 18.2-183) specifically

required that notice be "mailed by certified or registered mail,

evidenced by return receipt, to the last known address of the

---

[9] Id.

[10] 213 Va. at 310, 191 S.E.2d at 733 (emphasis in original).

maker." In fact, the evidence in Rinkov's trial proved that although the notice was properly mailed, it was returned as unclaimed.[11] Thus, Rinkov is readily distinguishable from the case at bar. The statute here requires nothing more than proof that the notice was "sent by certified mail, return receipt requested, to [defendant's] last known address or the address listed in the contract."[12] As the Supreme Court of Virginia stated in Jimenez:

> We think it clear that the General Assembly meant what it said, i.e., that a person accused of violating the statute cannot be convicted unless the evidence proves beyond a reasonable doubt, inter alia, that the accused "fail[ed] to return [the] advance within fifteen days of a request to do so," and that the request was "sent by certified mail, return receipt requested."[13]

Indeed, "[w]here a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation."[14] "'Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied.'"[15] If the legislature intended to require a

---

[11] Rinkov, 213 Va. at 308, 191 S.E.2d at 732.

[12] Code § 18.2-200.1.

[13] Jimenez, 241 Va. at 251, 402 S.E.2d at 681 (holding that actual notice of request does not satisfy the requirements of Code § 18.2-200.1).

[14] Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992).

[15] Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396

- 38 -

showing of actual receipt as it did in Code § 18.2-183, it presumably would have used language to do so.  Accordingly, we find that the trial judge had sufficient evidence to prove beyond a reasonable doubt that Frazier requested return of her advanced payments.

III. Appointment of a Guardian ad Litem or Committee

Holsapple next contends the trial court erred in finding he was not a "person under a disability" as defined by Code § 8.01-2(6)(a), and as such, that Holsapple was not entitled to an appointment of a guardian ad litem pursuant to Code § 8.01-9, or a committee, pursuant to Code § 53.1-223, once Frazier forwarded the notice to him while he was incarcerated.[16]  Thus,

_____

S.E.2d 672, 674 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

[16] Code § 8.01-9 provided as follows, in relevant part, at the time Frazier sent the notice:

> A.  A suit wherein a person under a disability is a party defendant shall not be stayed because of such disability, but the court in which the suit is pending, or the clerk thereof, shall appoint a discreet and competent attorney-at-law as guardian ad litem to such defendant, whether the defendant has been served with process or not. . . .

> B.  Notwithstanding the provisions of subsection A or the provisions of any other law to the contrary, in any suit wherein a person under a disability is a party defendant and is represented by an attorney-at-law duly licensed to practice in this Commonwealth, who shall have entered of record an appearance for such person, no guardian ad litem need be appointed for such

- 39 -

Holsapple argues he was denied fundamental due process rights as he was not properly notified of the nature of the "suit" against him.  However, Holsapple bases his claim on his contention that the trial court erroneously found Holsapple's incarceration was not due to a felony conviction.  Indeed, the trial court held that "there [was] no evidence [Holsapple] was in jail on a felony charge so that he was a person under a disability for having been convicted of a felony."  The record demonstrates Holsapple failed to introduce any evidence concerning the nature

person unless the court determines that the interests of justice require such appointment; or unless a statute applicable to such suit expressly requires an answer to be filed by a guardian ad litem. The court may, in its discretion, appoint the attorney of record for the person under a disability as his guardian ad litem, in which event the attorney shall perform all the duties and functions of guardian ad litem.

Any judgment or decree rendered by any court against a person under a disability without a guardian ad litem, but in compliance with the provisions of this subsection B, shall be as valid as if the guardian ad litem had been appointed.

Code § 53.1-223 provided:

No action or suit on any claim or demand, except actions to establish a parent and child relationship between a child and a prisoner and actions to establish a prisoner's child support obligation, shall be instituted against a prisoner after judgment of conviction and while he is incarcerated, except through his committee.

- 40 -

of his 1998-1999 incarceration at trial.[17]  Furthermore, these sections apply only to civil proceedings.[18]

Accordingly, we find no error in the trial court's determination that there was no evidence to establish Holsapple was a "person under a disability," or that he was not entitled to an appointment of a guardian ad litem, or a committee, for purposes of notice.

## IV.  Failure to Perform

Holsapple next argues that the trial court erred in finding he failed to complete the construction as promised.  Holsapple contends the trial court erred in finding that poor workmanship amounted to a "failure to perform" under the statute.  Further, he states that the trial court erred in finding the workmanship was poor because it failed to comply with building codes.  He also argues that Currier was the individual responsible for the poor workmanship, as opposed to him, as he was incarcerated at the time the work was performed and in any event, he was merely Currier's employee.  In the alternative, Holsapple contends he was "legally justified" in failing to complete the construction on the truss work because he was sentenced to prison in August 1998, and by August 15, 1998, the trial court had denied his

---

[17] Holsapple's unsuccessful attempt to re-open the case to submit evidence establishing his disability was unsuccessful, and the conviction order he attached to his Amended Motion to Set Aside the Verdict does not constitute evidence.

[18] See Code § 8.01-2.

request for work-release to complete the construction.

We find no merit in Holsapple's argument that the trial court's finding, "Holsapple failed to perform on the promise because the workmanship was unsatisfactory seems inconsistent with the plain language of the statutes." Indeed, we have found

> [i]t is apparent from reason and common sense that construction fraud can occur despite the fact that a builder or contractor begins to perform on the contract. . . . The relevant question is whether a builder or contractor obtained an advance based upon future work promised with a fraudulent intent not to perform or to perform only partially, not whether the contractor had performed work for which he was paid."[19]

Common sense would likewise dictate that a performance of construction which is so poor as to render a structure unsafe or uninhabitable could, under the appropriate circumstances, constitute the failure to perform the contractual promise at issue. Here, the evidence demonstrated that the truss work was done so poorly that the home was simply not safe to live in. Accordingly, we find no error in the trial court's determination that the faulty workmanship in this case constituted a failure to perform within the meaning of the statute.

---

[19] Rader v. Commonwealth, 15 Va. App. 325, 332, 423 S.E.2d 207, 212 (1992) (emphasis added).

Further, we find no error in the trial court's consideration of building code violations in determining that the workmanship was faulty. "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant."[20] "The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue."[21] "Admissibility of evidence is an issue left to the discretion of the trial court, and unless the appellant proves an abuse of discretion, no error will lie."[22] In this case, evidence of the building code violations was relevant and probative because it demonstrated the poor quality of the workmanship. Therefore, the violations provided circumstantial evidence that the fact finder could consider to prove the necessary elements under the statute, and the trial court did not abuse its discretion in admitting such evidence.

Holsapple next contends he was not responsible for the work on the trusses, because he was incarcerated at the time the trusses were installed. However, Frazier testified that the "trusses were on" and that the work was "pretty far along" at the point Holsapple left the site due to his incarceration. The fact that Robert Johnson, an employee of Currier's who worked on

---

[20] Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citations omitted).

[21] Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988).

[22] Rader, 15 Va. App. at 331, 423 S.E.2d at 211.

construction of the home, testified that the roof was not on when Holsapple left, is of no consequence.  Indeed, it is within the province of the trial court to "evaluate[] the credibility of witnesses, resolve[] the conflicts in their testimony, and weigh[] the evidence as a whole.  Its finding is entitled to the same weight on appeal as that accorded a factual finding by a jury and will not be disturbed unless it is plainly wrong."[23]  Here, the trial court believed Frazier's testimony that the construction involving the trusses was complete at the time Holsapple was incarcerated, and we find no evidence which would suggest that the trial court's finding in this regard was plainly wrong.

Holsapple also argues he was merely an employee of Currier.  Thus, Currier was responsible for the poor workmanship, not Holsapple.  Nevertheless, the trial court found that Holsapple represented himself to Frazier as Currier's agent and general manager.  Indeed, Holsapple was just as involved in the dealings with Frazier, if not more involved, than Currier.  Accordingly, we find no error in the trial court's determination that Holsapple was jointly responsible for the representations made, and the work that was performed.

---

[23] Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984).

V.  Fraudulent Intent

Holsapple further contends the Commonwealth failed to establish evidence of his fraudulent intent at the time he accepted the advance from Frazier.  He argues that the contract concerning the trusses states the amount received was for materials, as well as labor, and that since there was no evidence presented concerning the cost of labor, the court could not infer his fraudulent intent in obtaining more money than the actual cost of the materials.  Holsapple also contends there was no evidence he bought the trusses or that he knew their actual cost.

"Whether a fraudulent intent existed at the time the advance was obtained depends upon the circumstances of the case."[24]  "The defendant's conduct and representations must be examined in order to determine if a fraudulent intent existed at the time."[25]

We are mindful, in resolving this issue, that "where the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"[26]  "However,

---

[24] Klink, 12 Va. App. at 819, 407 S.E.2d at 8.

[25] Id.

[26] Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)).

'[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'"[27]

Applying these principles to the evidence before us, we hold the evidence was sufficient to prove beyond a reasonable doubt that Holsapple violated Code § 18.2-200.1.  Taken together, Holsapple's representations and conduct demonstrated that he obtained the advanced funds with the fraudulent intent not to complete the project.  Indeed, contrary to Holsapple's argument, the contract at issue states an estimate to "order one set of house truss[es] . . . ."  It also states that any excess will be "refunded if other rafters are installed."  Although the pre-printed form indicates that the total requested includes labor as well as materials, the line below that particular statement was not filled in, thus indicating that the cost of labor was not included in the advanced amount.

Further, the evidence established that Holsapple was the individual who estimated the amounts necessary for the materials and labor and that he bought all of the required materials. Moreover, at the time Holsapple obtained the advance from

---

[27] <u>Cantrell v. Commonwealth</u>, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (quoting <u>Bridgeman v. Commonwealth</u>, 3 Va. App. 523, 526-27, 351 S.E.2d 598, 600 (1986)).

Frazier, he knew he would have to report to jail within a matter of days.  In addition, the trial court had before it evidence that Holsapple demanded $1,100 from Frazier for work he had already performed and had been paid in full.  The trial court also had before it evidence concerning the apparent misuse of the sliding glass door, and the problems concerning the licensure of both he and Currier.  Thus, we find no error in the trial court's determination that the circumstances, viewed as a whole, demonstrated Holsapple's fraudulent intent at the time he obtained the advanced funds from Frazier.

## VI.  Receipt of Funds

Finally, Holsapple maintains the trial court erred in finding he received the advanced payments.  However, viewed in the light most favorable to the Commonwealth, the evidence demonstrated that Holsapple at all times represented himself to be the agent and general manager of Star Bright Construction and although he did not physically accept the money from Frazier, he told her what amounts would be needed and he was present when she made the payments, even directing her to give the money to Currier.  In addition, it is clear that Holsapple had access to the funds, as he paid the site workers with the cash.  Thus, we find no error in the trial court's determination that Holsapple received the funds jointly with Currier, within the meaning of

Code § 18.2-200.1.[28]

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

[28] See Snyder v. Commonwealth, 202 Va. 1009, 1015, 121 S.E.2d 452, 457 (1961) ("We have, . . . in many cases reaffirmed the proposition that if a person is present at the commission of a crime, inciting, encouraging, advising or assisting in the act done, he is deemed to be an aider and abettor, and is liable as principal.").

Benton, J., dissenting.

In pertinent part, Code § 18.2-200.1 provides as follows:

> If any person obtain from another an advance of money, . . . with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money . . . if he fails to return such advance within fifteen days of a request to do so <u>sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract</u>.

(Emphasis added). Because it is a criminal statute, "Code § 18.2-200.1, must be strictly construed . . . [to mean that] the notice requirement of the statute [is] a material element of the offense charged." <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991). Thus, to sustain a conviction, the evidence must prove "beyond a reasonable doubt" that the notice requirement of the statute was satisfied. <u>Id.</u>

The majority distinguishes the notice requirement of this statute from the similar notice requirement in Code § 6.1-117 (now Code § 18.2-183) on the basis that the latter statute specifically requires that the certified or registered mail be "evidenced by return receipt." I believe the majority's distinction is nonessential and that the Supreme Court's holding in <u>Rinkov v. Commonwealth</u>, 213 Va. 307, 191 S.E.2d 731 (1972), interpreting the notice provision of Code § 6.1-117, is binding

on our application of Code § 18.2-200.1 to the circumstances of this case.  Therefore, I dissent.

In Rinkov, the Supreme Court held as follows:

> Manifestly, the purpose of requiring the notice to be sent by registered or certified mail, and evidenced by a receipt, is to have not only evidence of the required mailing to the defendant, but also evidence that the notice was either received in person by the defendant (as would be shown by his signature on the return receipt), or that the letter did in fact reach the last known address of the defendant and was there accepted by someone at that address. Otherwise there would be no reason for the statute to require the notice be sent by registered or certified mail and evidenced by a return receipt.

213 Va. at 310, 191 S.E.2d at 733.  Essentially, the Rinkov holding explains that the purpose of requiring a return receipt is to provide proof that the notice was received by the accused or by someone at the accused's last address.  Id.

In the case of a prosecution under Code § 18.2-200.1, the Commonwealth must prove the statutory elements of "fraudulent intent . . . and fail[ing] or refus[ing] to perform [a prior] promise, and also fail[ing] to substantially make good [an] advance [of money]."  Id. (emphasis added).  In addition, however, the Commonwealth must prove the accused "fail[ed] to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested."  Id.  As the Court ruled in Rinkov, a certified mailing alone would provide proof that the item was mailed.  The statutory requirement,

however, that the request be "sent by certified mail, return receipt requested" provides clear legislative intent that the Commonwealth prove the request was sent and received by someone at the accused's last known address. Receipt of that request in the manner provided by statute is necessary to prove the statutory requirement that the accused "fail[ed] to return such advance within fifteen days of a request to do so." Code § 18.2-200.1.

A long-standing principle of statutory interpretation holds that words should be given their ordinary meaning unless otherwise defined. See Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982). It is generally understood that the request of a return receipt for certified mail provides the means to confirm by signatures that the intended recipient or someone at the recipient's address actually received the item. Therefore, I would hold, as the Court held in Rinkov, that where a statute requires a mailing and a return receipt, the Commonwealth must prove "that the notice was either received in person by the defendant (as would be shown by his signature on the return receipt), or that the letter did in fact reach the last known address of the defendant and was there accepted by someone at that address." 213 Va. at 310, 191 S.E.2d at 733.

The Commonwealth's evidence proved only that Sandra Frazier sent a request to Thomas Holsapple by certified mail return receipt requested. The Commonwealth did not introduce a copy of

- 51 -

the return receipt, which would have evidenced whether the letter was received. The Commonwealth also presented no other evidence that Holsapple actually received the letter or that anyone received the letter on Holsapple's behalf. Instead, the Commonwealth relies on Robertson v. Commonwealth, 12 Va. App. 854, 856-57, 406 S.E.2d 417, 418-19 (1991), asserting that the law presumes that post office clerks and prison officials properly carry out their official duties and, therefore, that the burden was on Holsapple to prove that he did not receive the letter.

In Robertson and its predecessors, we applied this presumption in determining whether, for evidentiary purposes, the chain of custody was satisfied. See also Smith v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). In determining such evidentiary matters, we have held that the Commonwealth must prove only by "reasonable assurance" that the evidence presented at trial is in the same condition as it was when obtained by the police. Robertson, 12 Va. App. at 857, 406 S.E.2d at 419. This presumption, which satisfies the "reasonable assurance" standard for evidentiary matters, is insufficient, however, to satisfy the constitutional requirement that the Commonwealth prove beyond a reasonable doubt each essential element of an offense. See Jackson v. Virginia, 443 U.S. 307, 316 (1979); Powell v. Commonwealth, 31 Va. App. 167, 172, 521 S.E.2d 787, 790 (1999) (holding that "the burden is on

- 52 -

the Commonwealth to establish . . . element [of crime] by proof beyond a reasonable doubt").  Therefore, I would hold that the Commonwealth failed to prove beyond a reasonable doubt the notice requirement, which is an element of the offense.

In sum, I believe the majority's holding that the plain language of the statute does not require a showing of actual receipt of the request contradicts the Supreme Court's holding in Rinkov.  I would hold that Rinkov binds our construction of the statutory required notice and, therefore, I would hold that the statutory requirements were not met.  I would further hold that the evidence is insufficient to convict Holsapple of violating Code § 18.2-200.1 without proof that Holsapple or someone at his last known address received the letter. Accordingly, I would reverse the conviction and dismiss the indictment.