## Norfolk

COLONEL KLINK

v.

COMMONWEALTH OF VIRGINIA

No. 1518-89-1

Decided July 1, 1991

COUNSEL

Oldric J. LaBell, Jr., for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this criminal appeal we consider what evidence is sufficient to support a conviction under Code § 18.2-200.1 for failure to perform a promised construction contract. We hold that evidence of failing to perform a construction contract for which an advance has been received is insufficient standing alone to support a conviction for this offense. The evidence must also show, either directly or through circumstantial evidence, that the advance was obtained "with fraudulent intent." The failure to respond to a request for a return of the advance sent by certified mail as required by statute does not, standing alone, establish a fraudulent intent.

On August 16, 1988, Kerry and Tracy Jones contracted with the defendant, a contractor, to add a sliding glass door, enlarge a deck and repair a spot in the kitchen at the Joneses' townhouse in Hampton, Virginia. The next day, the Joneses gave the defendant the contract to initial some minor revisions and a check in the amount of $637.50, half of the contract price.

The Joneses testified that it was their understanding that the defendant was to begin work the following week. However, neither Mr. nor Mrs. Jones remembers what the contract required regarding when the defendant was supposed to begin the work and when he was supposed to finish it. When the defendant did not begin the work or contact the Joneses, they became concerned and started calling the defendant two or three times a day, getting only his answering machine or receiving no return call after calling his pager number.

Sometime between August 16, 1988 and the end of the month, Mrs. Jones checked with the head of the homeowners' association

to see if the defendant had gotten approval for the work. She was told that the work had not been approved. Mrs. Jones testified that it was her understanding from the defendant that he would be responsible for obtaining the association's approval for the work.

On September 2, 1988, a man who identified himself as "Anthony" returned Mrs. Jones' call, telling her that the defendant "was on a job in North Carolina but had full intentions of starting work as soon as he got back." Mrs. Jones asked Anthony for the defendant's correct mailing address because she knew she was going to cancel the contract at that point.

After seeing the defendant "driving around" the following weekend, Mrs. Jones wrote him a letter on September 6, 1988 canceling the job order "due to non-performance" and demanding the return of the deposit money. She sent the letter by certified mail to 1641 Queen Street, Hampton, but it was returned because of an incorrect address.

Mr. Jones testified that on some night prior to October 5, 1988, a man came by the Joneses' townhouse and said that the defendant had sent him. Mr. Jones gave the man a note requesting a refund of their money. Mr. Jones testified that he does not remember any reasons the man gave for the defendant's failure to perform the work.

On October 5, 1988, Mr. Jones sent a letter to the defendant by certified mail requesting a refund of the deposit money within five days. The letter was sent to the defendant's Buckroe Motel address and was received. On October 12, 1988, Mr. Jones sent another letter to the defendant's Buckroe Motel address by certified mail requesting a refund of the deposit money. This time the letter was returned to the Joneses marked, "MOVED LEFT NO ADDRESS."

Nilesh Patel, who worked for the defendant from 1984 until December, 1988, testified that he contacted the Joneses twice prior to the middle of September, 1988. The first time was to tell them that the defendant was in North Carolina and the second time was to tell them that the defendant had gone to Minnesota due to a family emergency. Mr. Patel stated that the defendant left for North Carolina around September 2, 1988. He further tes-

tified that the defendant's business office was located at the Buckroe Motel.

The defendant testified that when he received the Joneses' deposit check, he turned it over to his supplier, DCP Service Corporation ("DCP"). He did this because he owed DCP money. On August 25, 1988, the defendant ordered a door for the Joneses' townhouse from DCP and paid $250 in cash as a deposit. The door had to be specially ordered because it is undersized. The defendant offered as evidence of this order a purchase order, dated 8-25-88, for a patio door. The order was on a form provided by DCP and was to Lowe's Building Supply.

The defendant testified that he contacted the president of the homeowners' association within a week of receiving the deposit money from the Joneses. The defendant claims that the work was approved by the association sometime around August 22, 1988.

The defendant also testified that from around September 2, 1988 until "sometime in September" he was working on a job in North Carolina. Upon his return, he learned that his 16-year-old daughter was getting married, so he drove to Minnesota "to talk to her before she did it — did anything." Upon his return home from Minnesota on about October 18, 1988, the defendant received the Joneses' letter dated October 6, 1988 and phoned Mrs. Jones. Mrs. Jones told him the contract was canceled and demanded a return of her money. The defendant asked her to reconsider, stating, "if she wanted me to go ahead with the job, I was ready to do it."

The defendant testified that his home address is 1641 Queen Street, Hampton, and his business address is at the Buckroe Motel in Hampton. He claimed he always intended to do the work for the Joneses.

■ The crime with which the defendant was charged consists of five elements: (1) obtaining an advance of money from another person, (2) a fraudulent intent at the time the advance is obtained, (3) a promise to perform construction or improvement involving real property, (4) a failure to perform the promise, and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or his address listed in the contract. Code § 18.2-200.1.

*See Jimenez v. Commonwealth*, 241 Va. 244, 247, 402 S.E.2d 678, 679 (1991).

The evidence proved that the defendant obtained a check in the amount of $637.50 as an advance on a contract to make additions and repairs on real property, that he failed to perform the contract, and that he failed to return the advance, even after a request to do so was sent by certified mail to his last known address. However, no direct evidence was introduced from which the trier of fact could conclude that the defendant obtained the advance with a fraudulent intent.

Whether a fraudulent intent existed at the time the advance was obtained depends upon the circumstances of the case. *Norman v. Commonwealth*, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986). The defendant's conduct and representations must be examined in order to determine if a fraudulent intent existed at the time. *Id.* at 519, 346 S.E.2d at 45. The use of false statements to induce a victim to enter into a contract is persuasive evidence supporting a finding of a fraudulent intent. *Boothe v. Commonwealth*, 4 Va. App. 484, 491, 358 S.E.2d 740, 744 (1987).

In this case, no evidence supports a finding that the defendant obtained the advance with a fraudulent intent. There was no evidence of any false statements made to induce the homeowner to enter into the contract. The defendant's conduct did not give rise to an inference of fraudulent intent. His failure to perform the agreement or to return the advance was equally likely to have been caused by his poor management, financial distress or both.

The Attorney General contends that the defendant failed to preserve his right to appeal the sufficiency of the evidence. However, at the close of the Commonwealth's evidence, the defendant, by counsel, made a motion in which he argued that the evidence failed to show fraudulent intent, although he did not formally describe the motion as "a motion to strike the evidence." The court denied the motion and upon the conclusion of the defendant's evidence, defense counsel's argument to the trial court, sitting without a jury, reiterated that the Commonwealth had failed to prove the existence of a fraudulent intent. These actions by the defendant were sufficient to raise the question of sufficiency for consideration by the trial court and to preserve the defendant's right to appeal this issue. *See Campbell v. Commonwealth*, 12 Va. App.

476, 480, 405 S.E.2d 1, 2 (1991).

Having concluded that the evidence was insufficient to support the defendant's conviction, we need not address the remaining issues raised by the defendant. Therefore, for the reasons stated, the judgment of conviction is reversed.

*Reversed.*

Koontz, C.J., and Keenan, J., concurred.