COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Kelsey and Senior Judge Coleman
Argued at Richmond, Virginia


JOHN MICHAEL PHILLIPS, SR.

MEMORANDUM OPINION[*] BY
v.       Record No. 0372-07-2            JUDGE ROBERT P. FRANK
JANUARY 29, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

Keith N. Hurley (Keith N. Hurley, P.C., on brief), for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


John Michael Phillips, Sr., appellant, was convicted, in a jury trial, of construction fraud in

violation of Code § 18.2-200.1. On appeal, he contends the evidence was insufficient to support

a finding that he obtained an advance of funds with fraudulent intent. For the reasons that

follow, we reverse the judgment of the trial court.

BACKGROUND

On August 9, 2005 appellant met with homeowner B.H. and they discussed various

repairs that B.H. wanted appellant to make to her house. At that time, appellant told B.H. that he

was between jobs, his wife was sick, and he was taking care of four children in his household.

B.H. agreed to hire appellant to do the proposed work.

On August 12, B.H. and appellant entered into two separate construction contracts for

$4,500 each. One contract involved the installation of siding and the replacement of several

Pursuant to Code § 17.1-413, this opinion is not designated for publication.

windows. The other was to repair an existing patio.[1] Upon appellant's request, B.H. gave appellant a check for $4,500. Appellant then advised B.H. that he was going to Lowe's to purchase some materials and to order some others. Appellant informed B.H. he would begin work on August 15, although he telephoned her that day and stated he was unable to work because his wife was ill. Appellant telephoned B.H. on August 17 and said he had the materials and would begin work the next day. On August 18, appellant called and stated that he was sick, but assured B.H. that all the materials were "bought and ready" and on his truck. Appellant telephoned on August 19 and told B.H. he would begin on August 22, which was the following Monday.

The next week appellant again did not begin work, but telephoned B.H. and offered various explanations as to why he was unable to work. Although not required pursuant to their contract, B.H. requested that appellant produce a "materials list" and a copy of his contractor's license. Appellant told B.H. he would provide both, but never did. On August 24, appellant delivered approximately eighty boards of treated lumber along with assorted items of his own equipment, including an air compressor, electrical cords, and two sawhorses. That same day B.H. told appellant to "not do the work until [she had] . . . the contractor's license copy in [her] hand and the building supplies." On August 29, appellant telephoned and requested that B.H. call his references, which she did. She indicated "two . . . were good and two . . . were bad and one that was kind of iffy."

On September 2, B.H. told appellant she wanted her money returned and that she no longer wanted him to perform the work. On September 7, appellant advised that someone had broken into his shop and had stolen all of the remaining materials for the job. Appellant told

---

[1] This appeal concerns only the contract for repairs to the patio. The other contract is not before us.

B.H. on September 26 that he was waiting to get the insurance money from the theft, and then he would refund her money, minus his labor fees. Appellant spoke with B.H. on October 5 and assured her that he was waiting for the insurance company to compensate him so that he could pay her. On October 6, B.H. mailed appellant a certified letter demanding return of her deposit.

Appellant told B.H. that he had spent all of her money on other things, although he indicated to her his willingness to complete the job. Appellant never refunded any money to B.H.

A jury convicted appellant of construction fraud, and this appeal follows.

## ANALYSIS

When considering the sufficiency of the evidence on appeal of a criminal conviction, we view the evidence "in the light most favorable to the Commonwealth and grant all reasonable inferences fairly deducible therefrom." Ellis v. Commonwealth, 29 Va. App. 548, 551, 513 S.E.2d 453, 454 (1999). In so doing, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

To establish a violation of Code § 18.2-200.1,[2] the Commonwealth must prove the following:

> (1) obtaining an advance of money from another person, (2) a fraudulent intent at the time the advance is obtained, (3) a promise to perform construction or improvement involving real property, (4) a failure to perform the promise, and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or his address listed in the contract.

Klink v. Commonwealth, 12 Va. App. 815, 818, 407 S.E.2d 5, 7 (1991).

Appellant contends that the Commonwealth failed to establish the second element of the offense, namely, that he possessed a fraudulent intent at the time B.H. gave him $4,500. We agree with appellant.

In determining whether fraudulent intent exists, this Court must "'look to the conduct and representations of the defendant.'" Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (quoting Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986)). The time for determining fraudulent intent is the time at which the defendant procured the advance, not at the time the parties entered into the contract. Code § 18.2-200.1; Klink, 12 Va. App. at 819, 407 S.E.2d at 7. "Whether fraud actually existed will depend upon the circumstances of each case." Norman, 2 Va. App. at 520, 346 S.E.2d at 45.

---

[2] Code § 18.2-200.1 provides in relevant part:

> If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

As the Supreme Court of Virginia noted in Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995), "[i]ntent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." The Commonwealth must exclude reasonable hypotheses of innocence that flow from circumstantial evidence. Welshman v. Commonwealth, 28 Va. App. 20, 36, 502 S.E.2d 122, 130 (1998) (*en banc*). "It need not, however, 'disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" McCary v. Commonwealth, 42 Va. App. 119, 127, 590 S.E.2d 110, 114 (2003) (quoting Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988)) (other citation omitted).

The use of false statements to induce a victim to enter into a contract is persuasive evidence supporting a finding of a fraudulent intent. Klink, 12 Va. App. at 819, 407 S.E.2d at 7. See also Norman, 2 Va. App. at 521, 346 S.E.2d at 46 (finding fraudulent intent where defendant falsely stated that he had put the advance into escrow and had purchased materials for construction). Additionally, in Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 547 (2002), we noted fraudulent intent is established when a contractor receives "advances for supplies that were never purchased."

A general lack of communication between the parties about problems with the project is further evidence of intent to defraud. Rader, 15 Va. App. at 330, 423 S.E.2d at 211. In Norman, this Court found that "[appellant's] failure to contact [the victim] when he realized that he would be financially unable to perform the construction contract was an additional circumstance upon which the jury could have relied" in finding fraudulent intent. Norman, 2 Va. App. at 521, 346 S.E.2d at 46. In comparison, this Court has also found no fraudulent intent where a defendant remained in contact with his client, giving him reasons for delay and assurances that the project

- 5 -

would be completed. Boothe v. Commonwealth, 4 Va. App. 484, 491, 358 S.E.2d 740, 745 (1987).

In McCary, 42 Va. App. 119, 590 S.E.2d 110, we held that appellant's "representations and conduct, when taken together, provided a sufficient basis from which the trial court could conclude that [appellant] acted with fraudulent intent." Id. at 127, 590 S.E.2d at 114. In that case, appellant's unfulfilled promises, combined with his "general lack of communication," failure to obtain a Virginia Contractor's License, and his pattern of past similar conduct provided the trial court with sufficient evidence to conclude that appellant acted with fraudulent intent. Id. at 129, 590 S.E.2d at 115.

However, in Klink, 12 Va. App. 815, 407 S.E.2d 5, this Court found no fraudulent intent where appellant obtained an advance from the homeowners, then simply failed to perform the contract. Id. at 816, 407 S.E.2d at 6. Appellant entered into a contract with the homeowners on August 16 to make repairs to their townhouse. Id. After giving appellant half of the contract price as an advance on the following day, the homeowners expected appellant to begin work the following week. Id. When appellant did not begin work or contact the homeowners, the homeowners became concerned and started to call appellant two to three times a day. Id. The homeowners reached only appellant's answering machine and never received a return call. Id. On September 2 appellant contacted the homeowners and explained his absences due to working on another job and attending a family emergency. Id. at 817, 407 S.E.2d at 6. On September 6 the homeowners wrote appellant a letter canceling the job. Id. This Court found there was no evidence of false statements to induce the homeowners into entering the contract, and appellant's behavior did not give rise to an inference of fraudulent intent. Id. at 819, 407 S.E.2d at 8. The Court stated, "[appellant's] failure to perform the agreement or to return the advance was equally likely to have been caused by his poor management, financial distress or both." Id.

In this case, we find that the evidence proves appellant received an advance of funds from B.H. and that he did not perform the work. We find nothing in the record to show appellant made any false statements inducing B.H. to part with her money. From the outset, appellant explained his unique circumstances to B.H. Before he requested the advance of funds, appellant openly admitted that he was struggling financially, his wife was ill, and he was responsible for four children.

Unlike the facts of Klink, appellant here actually began work on the project. We note that although appellant was slow in starting, he contacted B.H. each time he knew he would not be at her house to begin work. In fact, it is apparent from the record that appellant initiated most of the communication with B.H. Importantly, on August 24, less than two weeks from the date she gave appellant the advance, B.H. directed appellant to stop working until he produced his contractor's license. When he did not comply by September 2, B.H. told appellant to stop working and refund her money. Although appellant made representations to B.H. after September 2 as to why he could not timely complete the project, we find these comments, when considered with the evidence as a whole, are not dispositive of whether appellant possessed fraudulent intent in the inducement.

In addition, before B.H. canceled the project, appellant delivered a portion of the materials along with items of his personal equipment. Also, the contract did not provide for a start or completion date, and appellant never represented to B.H. that he would complete the project by a date certain. Finally, the contract did not require appellant to place the advanced funds in escrow, and nothing in the contract obligated appellant to segregate B.H.'s advance from his own funds. "Although the combination of these circumstances did not excuse [appellant] from performing his contract, they weigh heavily against the conclusion that he *entered into* the contract with fraudulent intent." Boothe, 4 Va. App. at 491, 358 S.E.2d at 745

(emphasis in original). As we concluded in <u>Klink</u>, we find here that "[appellant's] failure to perform the agreement or to return the advance was equally likely to have been caused by his poor management, financial distress or both." <u>Klink</u>, 12 Va. App. at 819, 407 S.E.2d at 8.

CONCLUSION

We conclude that the record does not support a finding that appellant obtained the advance from B.H. with fraudulent intent. Accordingly, the judgment of the trial court is reversed.

<u>Reversed and dismissed.</u>