COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


JOHN WADE DYER
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2926-08-2                        JUDGE CLEO E. POWELL
                                                         JANUARY 26, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge Designate

Jessica M. Bulos, Assistant Appellate Defender (Office of the
Appellate Defender, on briefs), for appellant.

Josephine F. Whalen, Assistant Attorney General II (William C.
Mims, Attorney General, on brief), for appellee.


John Wade Dyer ("Dyer") was convicted of construction fraud, in violation of Code

§ 18.2-200.1.  On appeal, Dyer argues that the evidence is insufficient to support his conviction

because he did not have the intent to defraud the alleged victims when he received the money.[1]

For the reasons that follow, we agree and reverse Dyer's conviction and dismiss the indictment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Dyer also contends that even though the trial court sustained his objection to portions of
Mrs. Sigman's testimony that men came to her house on Dyer's behalf to complete the work in
exchange for more money, the trial court nevertheless considered it and, therefore, this Court
should as well.  "A judge, unlike a juror, is uniquely suited by training, experience and judicial
discipline to disregard potentially prejudicial comments and to separate, during the mental
process of adjudication, the admissible from the inadmissible, even though he has heard both."
Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981) (citations omitted).
Nothing in the record explicitly reveals that the trial court relied on this testimony and, therefore,
because we view the evidence in the light most favorable to the Commonwealth, we determine
that this argument is without merit.  Finally, Dyer asserts that it is "questionable at best" whether
the Commonwealth argued to the trial court that Dyer's unfulfilled promise to complete the work
the day he contracted with the Sigmans should serve as the basis for finding that Dyer had

## I.  BACKGROUND

In 2006, John Wade Dyer, a landscaping contractor, was working on trees in a residential neighborhood in Albemarle County, Virginia.  While in the neighborhood, he visited the home of Robert and Suzanne Sigman a few times to inquire as to whether they had any work that they needed to have done.  On one of these occasions, Dyer and the Sigmans spoke about some work that the Sigmans wanted to have done to trees on their property.  The Sigmans agreed to pay Dyer $770 to remove two tress, trim a holly tree, cut down some vines, and remove the debris. Dyer told Mrs. Sigman that he would complete the work on July 12, 2006.

On July 12, 2006, as Dyer was finishing work in a neighbor's yard, Mrs. Sigman told him that she was leaving for the night and would return the following day.[2]  Dyer told her that he and his crew would finish the work at her house that day.  He requested payment from Mrs. Sigman so that he could pay his crew.  Mrs. Sigman paid him by check, which he cashed that day.

When Mrs. Sigman returned on July 13, 2006, she found that Dyer had cut down some of the trees that he contracted to remove.  He disposed of the branches but left the trees behind on the Sigmans' lawn.  No other work had been done.  The vines that were to be cut down and the holly tree that was to be trimmed had not been touched.  A tailgate, a cooler, and a large can of oil were left behind in the Sigmans' yard.

---

fraudulent intent when he accepted the advance.  Because we hold that Dyer prevails on his challenge to the sufficiency of the evidence, we need not address this argument.

[2] The dissent asserts that the trial court was entitled to rely on the fact that Dyer failed to complete the work across the street as probative of Dyer's intent as to the work at the Sigmans' home.  It should be noted, however, that Mrs. Sigman admitted that Dyer completed the work at the home of the neighbor next door even though he did not finish the work at the neighbor's home across the street.

Mrs. Sigman immediately called Dyer and he told her that after he cut the trees down, it began to rain and he had to stop. Because it was still too wet to complete the work on the 13th, he promised to return on the 14th to finish the job.

When Dyer did not return on Friday, July 14, Mrs. Sigman called him again. He told her that because it was raining again, he would ruin her lawn if he returned to complete the work at that time. Dyer told Mrs. Sigman that they would have to wait until the ground was dry.[3] She agreed with his suggestion. Mrs. Sigman told Dyer that her husband was out of town and she needed the work to be completed before he returned. Mrs. Sigman called Dyer on July 16 and 17 and left messages.[4] Dyer did not answer or return Mrs. Sigman's calls after the 14th. However, some men who were working with Dyer on the 12th came to her house a week later but were not allowed to complete the work. On July 26, Mrs. Sigman also received a phone call from a man named Jenkins who said he was calling on behalf of Dyer to schedule completion of the work. Mrs. Sigman told Jenkins that was unacceptable and that she wanted Dyer to call her. Mrs. Sigman did not permit Jenkins to complete the work because she did not know him.

When she still did not receive a phone call from Dyer, Mrs. Sigman called the police on July 15 and was told to go to the magistrate's office to file a complaint. There, Mrs. Sigman then learned that she needed to send Dyer certified letters demanding that he complete the work that he had been paid to do. Mrs. Sigman then sent Dyer three certified letters – one to each address that she had for him. She mailed two letters on Monday, July 17 and one additional letter on July 21. One letter was returned as undeliverable, and the other two letters were unclaimed. Dyer never personally responded to her letters.

---

[3] At trial, Mrs. Sigman conceded that the ground was somewhat wet.

[4] Mrs. Sigman also testified that she called Dyer four times on July 16 but was unable to leave a message because the voicemail said that the party was unavailable.

The trial court found that Dyer and Mrs. Sigman agreed that the ground was too wet for him to perform the work on either July 13 or 14. At trial, the court appeared to focus on the lack of communication and the fact that the work was never completed, repeatedly asking defense counsel why Dyer was hesitant to speak directly with Mrs. Sigman and why Dyer never completed the work. The Commonwealth, in its response to Dyer's closing argument, argued that the evidence of the fraudulent intent was the fact that Dyer never completed the work that he was paid to do. At the close of the Commonwealth's rebuttal, the trial court said, "I agree" and convicted Dyer.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"On appeal, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences therefrom." Barlow v. Commonwealth, 26 Va. App. 421, 428-29, 494 S.E.2d 901, 904 (1998). "When ruling upon the sufficiency of the evidence, we grant the judgment of the trial court sitting without a jury the same weight as a jury verdict and will not disturb that judgment on appeal unless it is plainly wrong or without evidence to support it." Ellis v. Commonwealth, 29 Va. App. 548, 554-55, 513 S.E.2d 453, 456 (1999) (citing Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991)).

> Where the evidence is entirely circumstantial, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt.

Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984) (citations omitted).

> In considering an appellant's alternative hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon

- 4 -

consideration of all the evidence, could have rejected the [appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt."

Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Hudson

v. Commonwealth, 265 Va. 505 513, 578 S.E.2d 781, 785 (2003)).

### B.  SUFFICIENCY OF THE EVIDENCE TO PROVE CONSTRUCTION FRAUD

A person is guilty of construction fraud, an offense deemed to be a larceny, if he

> obtain[s] from another an advance of money . . . with fraudulent intent, upon a promise to perform . . . any . . . improvements to . . . real property, including horticulture, nursery or forest products, and fail or refuse to perform such promise, and also fail to substantially make good such advance, . . . if he fails to return such advance within fifteen days of a request to do so sent by certified mail . . . to his last known address or to the address listed in the contract.

Code § 18.2-200.1.  Thus, this crime consists of five elements:

> (1) obtaining an advance of money from another person, (2) a fraudulent intent *at the time the advance is obtained*, (3) a promise to perform construction or improvement involving real property, (4) a failure to perform that promise, and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or his address listed in the contract.

Klink v. Commonwealth, 12 Va. App. 815, 818-19, 407 S.E.2d 5, 7 (1991) (emphasis added)

(quoting Code § 18.2-200.1).  The particular circumstances of a given case, including the

defendant's conduct and representations, determine whether the defendant had a fraudulent intent

at the time he accepted the advance.  Norman v. Commonwealth, 2 Va. App. 518, 519-20, 346

S.E.2d 44, 45 (1986).

> We have held that certain circumstances, applicable to the case at bar, are probative of fraudulent intent.  See, e.g., Norman, 2 Va. App. at 521, 346 S.E.2d at 46 (finding that intent can be inferred from failure to do anything in furtherance of promise after receipt of advance); Rader [v. Commonwealth], 15 Va. App. [325,] 330, 423 S.E.2d [207,] 210 [(1992)] (noting that failure to apply for a permit gives rise to an inference of fraudulent intent); Id. at

330-31, 423 S.E.2d at 211 (holding that a "general lack of communication with the homeowners" is probative of fraudulent intent); <u>Norman</u>, 2 Va. App. at 521, 346 S.E.2d at 46 (noting that a contractor's failure to contact the consumer, when the contractor realized he was financially unable to perform construction, was probative); <u>Rader</u>, 15 Va. App. at 330, 423 S.E.2d at 211 (commenting that a request for an advance accompanied by a promise to complete followed by a failure to complete was probative); <u>Hubbard v. Commonwealth</u>, 201 Va. 61, 67, 109 S.E.2d 100, 105 (1959) (finding that other similar transactions by defendant using false representations was probative of fraudulent intent).

<u>McCary v. Commonwealth</u>, 42 Va. App. 119, 127, 590 S.E.2d 110, 114 (2003).

A limited number of cases have looked at the sufficiency of the evidence to sustain a conviction for construction fraud where the challenged element is whether the appellant intended to defraud the payee at the time the advance was made. In 1986, our Court first considered sufficiency of the evidence to prove fraudulent intent in <u>Norman</u>. There, the evidence proved that Roy G. BeMent paid Norman $60,000 to rent two lots with cabins in a campground time-sharing project. <u>Norman</u>, 2 Va. App. at 520, 346 S.E.2d at 45. To entice BeMent to pay the money, Norman gave BeMent a personal tour of the site and "repeatedly assured BeMent that he had bought and stored in a warehouse all the equipment and furnishings needed for twenty cabins." <u>Id.</u> at 520, 346 S.E.2d at 45-46. The contract specified that the money would be held in escrow and not paid to Norman until "(1) delivery of a properly executed lease; and (2) satisfaction that the log cabin had been completed." <u>Id.</u> at 520, 346 S.E.2d at 46. During the subsequent months, BeMent repeatedly called Norman to check on the project's progress and was told that the weather had slowed the work. <u>Id.</u> at 521, 346 S.E.2d at 46. When BeMent made an unannounced visit to the site, he learned that no work had been done. <u>Id.</u> The work was never completed, and BeMent's money was not returned. <u>Id.</u> Moreover, the evidence proved that Norman never requested necessary building permits or zoning changes to complete the project. <u>Id.</u> Norman never established an escrow account nor did he have a warehouse

containing the necessary equipment and furnishings.  Id.  Indeed, he admitted that he spent BeMent's money on personal living expenses.  Id.  This Court concluded that the fact finder could have inferred that "Norman knowingly and intentionally made material misstatements of facts and did nothing in furtherance of fulfilling his promise to build" and affirmed Norman's conviction.  Id.

One year later, our Court again considered the sufficiency of the evidence to prove construction fraud in Boothe v. Commonwealth, 4 Va. App. 484, 358 S.E.2d 740 (1987).  There, Harold W. Mason entered into two contracts with Boothe, in September and October of 1984, and paid him $3,241 in advance.  Id. at 485, 358 S.E.2d at 741.  Neither contract specified a date by which the work was to be completed.  Id.  Mason worked with Boothe in the past and also previously paid Boothe in advance.  Id.  Mason testified that he told Boothe that he wanted the work completed as quickly as possible but a witness for Boothe told the Court that she was present when the September contract was signed and Mason told Boothe that he was "in no hurry" for the work to be done and merely wanted an estimate for his lender.  Id. at 486, 358 S.E.2d at 741.  According to Mason, Boothe completed some work on the projects but did not finish.  Id. at 486, 358 S.E.2d at 742.  Mason repeatedly tried to contact Boothe and during one attempt, learned from the person who answered Boothe's phone that Boothe's father was ill.  Id. In late November, Mason wrote to Boothe and offered to pay him an additional $200 to complete the work or, alternatively, demanded return of the advance.  Id.  In response, Boothe called Mason and assured him that the work would be done.  Id.  Mason also acknowledged that Boothe's father died in early January and that there was a period of two to three weeks in January where it was too cold for the work to be completed.  Id.  Boothe testified in his own defense and told the court that he was unable to perform the work because of bad weather.  Id. at 487, 358 S.E.2d at 742.  He also explained to the Court that he could not account for the money

Mason had paid him because of the way that he handled his finances. Id. at 488, 358 S.E.2d at 742. This Court found that the Commonwealth failed to prove that Boothe intended to defraud Mason when he entered into the contracts with Mason. Id. at 490, 358 S.E.2d at 744. Specifically, this Court relied on the fact that Boothe made no false statements to Mason and the contracts did not specify a completion date. Id. at 491, 358 S.E.2d at 744. Our Court also credited the facts that Boothe began some work on the project and that Boothe made at least one attempt to contact Mason. Id. This Court also determined that the trial court put too much reliance on Boothe's inability to account for the funds Mason had paid him. Id. Our Court reversed Boothe's conviction and dismissed his indictment. Id.

In 1991, our Court considered the sufficiency of the evidence to prove fraudulent intent and again reversed. Klink v. Commonwealth, 12 Va. App. 815, 407 S.E.2d 5 (1991). In Klink, our Court held that "[t]he failure to respond to a request for a return of the advance sent by certified mail as required by statute does not, standing alone, establish a fraudulent intent." Id. at 816, 407 S.E.2d at 6. This Court concluded that Klink's "failure to perform the agreement or to return the advance was equally likely to have been caused by his poor management, financial distress or both." Id. at 819, 407 S.E.2d at 8.

The following year, this Court again considered the sufficiency of the evidence to prove fraudulent intent, and, this time, affirmed the appellant's conviction. Rader v. Commonwealth, 15 Va. App. 325, 326, 423 S.E.2d 207, 208 (1992). In that case, Rader specifically requested an advance to purchase new doors and windows for the construction project but never ordered the items. Id. at 330, 423 S.E.2d at 210-11. Moreover, Rader falsely told the homeowners that the advance was necessary to order these items. Id. at 330, 423 S.E.2d at 211. In addition, Rader did not apply for all of the permits necessary to complete the construction project when he did apply for some of the permits. Id. Finally, Rader did not remain in contact with the homeowners

and never responded to their demand that he return the advance.  Id.  From all of these facts, this Court concluded that there was sufficient evidence in the record from which the fact finder could have inferred that Rader requested the advance with fraudulent intent.  Id.

The situation here is not unlike those presented in Klink and Boothe.  Dyer began work on the landscaping job that he contracted to perform.  When the job was not completed on the day promised, he accepted a telephone call from the homeowner and assured her that the work would be completed once the ground was dry and the homeowner agreed to the delay.[5] Moreover, a week after the contract was entered into, men who worked with Dyer went to the Sigmans' home, but Mrs. Sigman refused to allow them to complete the work.  Similarly, on July 26th, when Jenkins called on Dyer's behalf, Mrs. Sigman would not allow him to work and informed him that she wanted to speak with Dyer.  Although the dissent emphasizes Mrs. Sigman's desire to speak with Dyer and to have him perform the work, her desires are irrelevant as to whether Dyer intended to defraud her at the moment he obtained advance payment from her.  Notably, Dyer contracted to complete this landscaping work on Wednesday, July 12 and Mrs. Sigman sent him letters demanding that he perform or return the advance on Monday, July 17.

In a colloquy with counsel, the trial court relied on the fact that Dyer never performed the work in finding that he intended to defraud the Sigmans when he entered into the agreement to work.  However, evidence of failure to perform a construction contract for which an advance has been received is insufficient standing alone to support a conviction for this offense.  Klink, 12

---

[5] The dissent correctly states that the evidence at trial failed to establish when or how much it rained.  For the trial court to have made the factual findings about the amount or timing of the rain as it necessarily did to convict Dyer, the trial court would have had to go beyond discrediting Dyer to reach a conclusion unsupported by the record.  On the evidence in this record, any inference regarding the lack of rain would have been pure speculation because no facts were provided that would have supported such an inference.

Va. App. at 816, 407 S.E.2d at 6.  The evidence must also show either directly or through circumstantial evidence that the advance was obtained with fraudulent intent.  Id.

The facts are clear that Dyer accepted payment with the promise to perform the contract that day, but never completed the work.  The record also indicates that Dyer failed to complete a project at a neighbor's house.  While each of these facts is probative, they are not dispositive of his intent.  The record indicates that some of the work was performed on the 12th.  Moreover, both parties agreed that it rained sometime on the 12th.  Also, both parties agreed and the trial court conceded that there was contact between the parties on the 13th and 14th agreeing that it was too wet to work on those days.[6]  Finally, the evidence is clear that attempts were made, either by men who worked with Dyer or by someone on Dyer's behalf, to complete the work from as early as one week after the contract was entered into to as late as the 26th of July.  With regard to the work that was not completed for one neighbor, this fact is counterbalanced by the fact that work was completed for another neighbor on that same day.  It is uncontested that Dyer failed to fully perform the work that he agreed to do.  Thus, although the combination of these circumstances does not excuse Dyer from performing his contract, the record does not support the conclusion that he did not intend to complete the work when he accepted the advance from Mrs. Sigman.  "[A] suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction."  Bishop, 227 Va. at 170, 313 S.E.2d at 393.

---

[6] Contrary to the dissent's contention that Mrs. Sigman stated on cross-examination that she could not remember whether the ground was too wet on July 14, the trial court accepted her testimony on direct that the ground was too wet on both the 13th and 14th.

## III.  CONCLUSION

For the foregoing reasons, we reverse Dyer's conviction because the evidence, in the light most favorable to the Commonwealth, does not prove that Dyer intended to defraud the Sigmans at the moment he requested and received the advance from Mrs. Sigman.

<u>Reversed and dismissed.</u>

Beales, J., dissenting.

The disputed issue on appeal here is whether the evidence at trial was sufficient to prove that Dyer obtained the $770 advance from Mrs. Sigman with fraudulent intent.  See McCary v. Commonwealth, 42 Va. App. 119, 126, 590 S.E.2d 110, 113 (2003) (reciting the elements of an offense under Code § 18.2-200.1).  Whether the fraudulent intent required under Code § 18.2-200.1 "'actually existed will depend upon the circumstances of each case.'"  Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (quoting Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986)).  Here, after "look[ing] to the conduct and representations of the defendant," id., the trial court found that Dyer did fraudulently obtain the $770 advance from Mrs. Sigman.  As this factual finding is not clearly wrong, I cannot join the majority opinion.  Therefore, I respectfully dissent.

Because the trial court found that the evidence was sufficient to prove beyond a reasonable doubt that Dyer violated Code § 18.2-200.1, on appeal we must examine "'whether the evidence adduced at trial could support *any* rational determination of guilt beyond a reasonable doubt.'"  Coleman v. Commonwealth, 52 Va. App. 19, 23, 660 S.E.2d 687, 689 (2008) (quoting United States v. Powell, 469 U.S. 57, 67 (1984)) (emphasis added).  Furthermore, "the possibility that another rational factfinder *could* have found differently does not mean that *no* rational factfinder would have found" that appellant was guilty beyond a reasonable doubt here.  Noakes v. Commonwealth, 54 Va. App. 577, 586, 681 S.E.2d 48, 52 (2009) (en banc).  Here, in my view, the evidence adduced at trial does not foreclose *any* rational determination of guilt beyond a reasonable doubt, and, therefore, it cannot be said that *no* rational factfinder would have found appellant guilty under Code § 18.2-200.1.  Accordingly, I would affirm Dyer's conviction.

Here, Dyer persuaded Mrs. Sigman to give him a check for $770 – payment in full for all the work that Dyer was hired to perform – on July 12, 2006. Mrs. Sigman testified:

> [A]s I was leaving Mr. Dyer was actually finishing up or working in the neighbor's across the street[7] and I told him I'd be back the next day, but he said, well, Suzanne, we're going to finish all of your work today and I need to pay the guys, so if you could give me the check . . . .

Thus, Dyer requested the full $770 advance for his work, assuring Mrs. Sigman that he "would make sure all the work was done" on July 12. However, "all the work" was not completed that day, or the next day, or in fact on any day thereafter, and none of her money that she paid Dyer for this work was ever returned to her.[8]

Dyer claimed that his work was cut short by rain on July 12. The evidence at trial did establish that it rained sometime before Mrs. Sigman returned home on July 13, but not *what time of the day* it rained or *how much* it rained on July 12. Dyer testified that, after he started on the Sigmans' project, "a big thunderstorm, I mean, a big put down" occurred, causing him and his men to load brush hurriedly in the truck and otherwise postpone the project – but apparently not to postpone going to the bank and cashing that very day Mrs. Sigman's check for payment in full for doing all of the work. There is no indication anywhere in the trial transcript that the trial

---

[7] Dyer, in fact, did not finish this project at that neighbor's yard across the street despite also being paid in full for that job too. The trial court was certainly entitled to consider this fact as probative of Dyer's intent with respect to the Sigmans' project as well.

[8] In exchange for receiving the $770 advance on July 12, 2006, Dyer agreed to cut down two dead trees in the Sigmans' backyard, to remove those trees and their stumps from the property, and to trim a large holly tree and cut down some vines. When Mrs. Sigman returned to her home on July 13, however, while the two dead trees had been cut down and their branches removed, the trunks of these dead trees were still lying in the yard, and their stumps were still in the ground. Furthermore, neither the holly tree nor the vines had been trimmed at all. No additional work was performed on this project after July 12, 2006.

court believed Dyer's testimony here,[9] and the trial court was certainly under no obligation to find his testimony credible.  See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.").

Furthermore, it is significant that Dyer left Mrs. Sigman no message or any other indication to explain why he did not complete the project on July 12, as he had promised her he would in exchange for being paid in full in advance.  In addition, Dyer's evasiveness and failure to communicate with the Sigmans were probative of his fraudulent intent at the time he persuaded Mrs. Sigman to make full payment in advance while promising to complete the job that day.  See McCary, 42 Va. App. at 128-29, 590 S.E.2d at 115 ("The trial court could infer from McCary's evasive conduct and failure to communicate that he never intended to complete the contracts.").  Instead, *Mrs. Sigman* called *Dyer* when she returned home on July 13 and found that the work was quite incomplete.[10]  Dyer claimed that the ground was too wet to finish the work on July 13, so he said he would be back the following day.  When Dyer did not show up or call by 12:30 p.m. on July 14, *Mrs. Sigman* decided to call *him* again.  Dyer again claimed that the ground was too wet to work on the Sigmans' property.[11]  Mrs. Sigman emphasized during

---

[9] In response to a question by the trial court, Mrs. Sigman testified that the weather was "clear" when she left home at about noon on July 12.

[10] The total of $770 paid to Dyer as an advance on July 12 actually encompassed two separate agreements between Dyer and Mrs. Sigman.  Mrs. Sigman paid $570 for removing the dead trees and their stumps, which Dyer failed to complete.  In addition, she paid  $200 for removing the vines and trimming the holly tree, which Dyer failed *even to begin*.

[11] Dyer contends (and the majority appears to accept his contention) that Mrs. Sigman agreed with him that the ground was too wet for work on July 13 *and* July 14.  However, on cross-examination at trial, Mrs. Sigman did not agree with Dyer's counsel that the ground was too wet for work on July 14, testifying that "I don't know that it was still too wet at that point . . . ."

- 14 -

this telephone conversation that she wanted the project completed quickly.  However, Dyer did not show up on July 15, or any day thereafter, and he never directly communicated with the Sigmans again after the July 14 telephone conversation.

At the time, Mrs. Sigman reluctantly excused Dyer's failure to complete the project on July 12, July 13, and July 14.  However, Dyer again failed to show up on July 15, and this time he provided no excuse.[12]  In fact, he did not even respond to Mrs. Sigman's phone calls – on July 15 or at any time thereafter.  Mrs. Sigman decided it was time to contact the police.  She was referred to the magistrate's office, where she was advised to send Dyer certified demand letters.  She mailed two demand letters on July 17, and a third was mailed on July 21.  One demand letter to the business address listed on Dyer's letterhead was returned by the post office as undeliverable, while the other two demand letters to Dyer's last known home address and to his parents' home address were returned to Mrs. Sigman because they were simply unclaimed.  The factfinder was entitled to draw reasonable inferences from Mrs. Sigman's understanding of the situation, her urgency in contacting the authorities, and the fact that two of her demand letters to appellant simply went unclaimed.  See Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (noting that a factfinder may "draw reasonable inferences from basic facts to ultimate facts").

Dyer contends that the evidence proved that he was still in contact with Mrs. Sigman because she testified that his associates contacted her twice.  He contends this testimony militates against the trial court's finding of fraudulent intent.  However, Mrs. Sigman's testimony merely

---

[12] Dyer testified that he told Mrs. Sigman that he had an out-of-town job, but Mrs. Sigman testified to the contrary.  The trial court was certainly entitled to believe Mrs. Sigman's testimony and to reject Dyer's.

established that some men showed up at the Sigmans' house and left without doing any work[13] and that a man named Jenkins (claiming to be Dyer's associate) contacted her at least two weeks after Dyer had assured her that the project would be completed. It was certainly reasonable for Mrs. Sigman – who had bargained solely with Dyer and who had already paid Dyer a significant amount of money for the entire project – to insist on communicating with Dyer himself to ensure that the project was completed. However, as the trial court found, Dyer was curiously "hesitant to talk with [Mrs. Sigman] directly."

Based on all this evidence and viewing the facts in the light most favorable to the Commonwealth, as this Court must because the Commonwealth prevailed below, Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), appellant's evasiveness and refusal to communicate directly with Mrs. Sigman certainly provide evidence to support the trial court's finding of fraudulent intent here.

In reversing Dyer's conviction under Code § 18.2-200.1, the majority relies upon Klink v. Commonwealth, 12 Va. App. 815, 407 S.E.2d 5 (1991), and Boothe v. Commonwealth, 4 Va. App. 484, 358 S.E.2d 740 (1987). I believe that these cases are readily distinguishable and, therefore, are not controlling in this case. First, in both Klink and Boothe, there was no evidence of a specific date by which the work was to be completed. See Klink, 12 Va. App. at 816, 407 S.E.2d at 6; Boothe, 4 Va. App. at 491, 358 S.E.2d at 744. Here, in contrast, the evidence proved that the work was supposed to commence *and* be completed on July 12, 2006. Dyer, in fact, insisted on receiving the full $770 payment on July 12 as an advance in order to pay his men for their work that day, and he assured Mrs. Sigman that work would be completed on that date.

---

[13] At trial, Mrs. Sigman testified that these men said that they "were there to finish the work" *and* "wanted to be paid," but the trial court sustained a hearsay objection to both of these statements. Thus, this testimony is not in evidence and the only facts properly before the trial court concerning these men were that they showed up and then left without doing any work. The trial court's ruling on excluding this part of Mrs. Sigman's testimony is not before us on appeal.

Second, unlike in Klink, Dyer presented no evidence that he used any of the $770 advance toward the Sigmans' project. In Klink, the defendant testified that he used part of the cash advance toward a patio door *and* he produced a purchase order corroborating this claim. Klink, 12 Va. App. at 818, 407 S.E.2d at 7. As the majority opinion acknowledges here, the only evidence presented at trial concerning the use of Mrs. Sigman's advance was the fact that Dyer cashed her check the same day that he promised to complete her work. He did not even deposit her check in a business account but rather cashed the check in full. Furthermore, there was no evidence, for instance, that Dyer ever paid his men for their (incomplete) work.

Third, as this Court noted in Rader, the defendants in Klink and Boothe "remained in constant contact with [their] clients, giving them reasons for [the] delay and assurances that the project would be completed." Rader, 15 Va. App. at 331, 423 S.E.2d at 211. Moreover, associates of Klink and Boothe informed the clients where the defendants were and why the projects were not yet completed. See Klink, 12 Va. App. at 817, 407 S.E.2d at 6-7; Boothe, 4 Va. App. at 486, 358 S.E.2d at 742.

As in Rader, where this Court affirmed a conviction under Code § 18.2-200.1, the victim in this case "had increasing difficulty in contacting" appellant, who was very evasive, and appellant "never responded to the certified letter demanding a refund of the money paid to him." Rader, 15 Va. App. at 331, 423 S.E.2d at 211. Here, appellant apparently refused even to claim two of the certified letters from Mrs. Sigman. Furthermore, according to Mrs. Sigman, Jenkins indicated to her only that he wished to finish the project on behalf of Dyer. Jenkins did not inform Mrs. Sigman where Dyer was, why Dyer was not responding to her telephone calls or demand letters, or why Dyer himself would not complete the project on which Dyer and she had agreed. Thus, unlike in Klink and Boothe, there was absolutely no indication from Jenkins why Dyer was absent.

Based on the foregoing discussion, I simply cannot conclude that *no* rational factfinder could find Dyer guilty of violating Code § 18.2-200.1 beyond a reasonable doubt here. Pursuant to this required standard of review on appeal, therefore, I respectfully dissent from the majority opinion reversing Dyer's conviction.