COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


CARLTON L. DAVIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2052-09-2                   JUDGE ROBERT P. FRANK
                                                         JULY 20, 2010

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                          Harry T. Taliaferro, III, Judge

            A. Davis Bugg, Jr. (Albert D. Bugg, III; Rumsey & Bugg, P.C., on
            briefs), for appellant.

            Josephine F. Whalen, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Carlton L. Davis, appellant, was convicted, in a bench trial, of construction fraud in

violation of Code § 18.2-200.1.  On appeal, he contends the evidence was insufficient to support

a finding that he obtained an advance of funds with fraudulent intent.  For the reasons that

follow, we reverse the judgment of the trial court.

                                    BACKGROUND

        In 2005, S.S. received real property deeded to her by her father.  The property was in

disrepair, so she contracted with appellant to extensively renovate the house.  Together appellant

and S.S. walked through the house and discussed the work that needed to be done.  They also

shopped at Lowe's and Home Depot where S.S. chose carpeting and kitchen cabinets.  Appellant

submitted an estimate to S.S. for $25,450.  S.S. agreed to the estimate, obtained a construction

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

loan, and on July 7, 2005 the parties entered into a written contract that incorporated the estimated price of completion. Renovations included extensive repairs to the kitchen, bathroom, living room, den, dining area, two bedrooms, and the front of the house.

On August 12, 2005 appellant asked for and received a draw from the construction loan in the amount of $6,000 to begin the project. He received a second draw of $6,350 on August 25, 2005, and a third draw of $7,400 on September 22, 2005. It is this draw that gave rise to the charge against appellant. In order to secure the third draw, appellant represented to S.S. that he had already ordered and paid $1,500 for the kitchen cabinets, when in fact, he had neither ordered the cabinets nor paid for them.

During the next eighteen months, appellant completed some, but not all, of the work on the house, including: rewiring; replacing floors and floor joists in the kitchen, living room, and bath; and cleaning and painting ceilings and existing walls. Appellant did not install the kitchen wall cabinets, the kitchen sink, or the stove. He also failed to connect the water line.

S.S. mailed appellant a letter on August 28, 2006, stating in part, "You have promised you were coming, but each time there is another excuse about finishing the job." Her attorney also sent appellant a letter on February 21, 2007 requesting he finish the job. Appellant responded to the attorney by letter dated March 31, 2007, indicating that he had run into some unexpected expenses with bad wiring and termite damage, and did not have money left to purchase the remaining materials. Again, S.S.'s attorney sent appellant a letter on May 3, 2007 acknowledging the "little bit" of work appellant had done, and urged appellant to complete the project.

Appellant never installed the cabinets in the kitchen. S.S. paid another contractor in August of 2007 to complete the renovations. Her final correspondence with appellant was in

May of 2008 when she asked for the return of her money and appellant responded that he did not owe her anything. S.S. received her occupancy permit in March of 2008.

In convicting appellant, the trial court referred to appellant's representations made to S.S. when asking for the third payment:

> [A]t this point the evidence before the Court is that he'd gotten substantially into doing the work and found that there were more things to be done; at least it was from the evidence more and more, more things needed to be done than what was in the estimate of the house to do work that was never contracted for. But, unfortunately, as part of the bill that was submitted for the third draw, $7,400, was $1,500, which on that bill it's got: Ordered cabinets.
>
> \*    \*    \*    \*    \*    \*    \*
>
> Moreover, the Court would find that there was no question on the third advance that a significant part of it, $1,500, was presented certainly on the representation that it had been done; this wasn't a future order to be put in place. This wasn't a cost incurred or reimbursement of something already paid.

The trial court found appellant guilty of construction fraud, and this appeal follows.

ANALYSIS

When considering the sufficiency of the evidence on appeal of a criminal conviction, we view the evidence "in the light most favorable to the Commonwealth and grant all reasonable inferences fairly deducible therefrom." Ellis v. Commonwealth, 29 Va. App. 548, 551, 513 S.E.2d 453, 454 (1999). In so doing, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a

- 3 -

reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

To establish a violation of Code § 18.2-200.1,[1] the Commonwealth must prove the following:

> (1) obtaining an advance of money from another person, (2) a fraudulent intent at the time the advance is obtained, (3) a promise to perform construction or improvement involving real property, (4) a failure to perform the promise, and (5) a failure to return the advance "within fifteen days of a request to do so by certified mail" to the defendant's last known address or his address listed in the contract.

Klink v. Commonwealth, 12 Va. App. 815, 818, 407 S.E.2d 5, 7 (1991).

While conceding that the representation to S.S. regarding payment for the kitchen cabinets was false, appellant contends that the evidence as a whole failed to establish the second element of offense, namely, that he possessed a fraudulent intent at the time he received the third draw of $7,400, of which $1,500 was for the purchase of the kitchen cabinets. This is the sole issue on appeal.

In determining whether fraudulent intent exists, this Court must "'look to the conduct and representations of the defendant.'" Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (quoting Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986)). The time for determining fraudulent intent is the time at which the defendant procured

---

[1] Code § 18.2-200.1 provides in relevant part:

> If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction . . . and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

the advance, not at the time the parties entered into the contract. Code § 18.2-200.1; Klink, 12 Va. App. at 819, 407 S.E.2d at 7. "Whether fraud actually existed will depend upon the circumstances of each case." Norman, 2 Va. App. at 520, 346 S.E.2d at 45.

As the Supreme Court of Virginia noted in Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995), "[i]ntent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." The Commonwealth must exclude reasonable hypotheses of innocence that flow from circumstantial evidence. Welshman v. Commonwealth, 28 Va. App. 20, 36, 502 S.E.2d 122, 130 (1998) (*en banc*). "It need not, however, 'disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" McCary v. Commonwealth, 42 Va. App. 119, 127, 590 S.E.2d 110, 114 (2003) (quoting Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988)) (other citation omitted). A trial court's decision on the question of intent represents a finding of fact which is accorded great deference on appeal and will not be reversed unless clearly erroneous. Robertson v. Commonwealth, 18 Va. App. 635, 639, 445 S.E.2d 713, 715 (1994).

While the use of false statements to induce a victim to enter into a contract is persuasive evidence supporting a finding of a fraudulent intent, Klink, 12 Va. App. at 819, 407 S.E.2d at 7, we note that courts have consistently considered the totality of the circumstances and do not look upon any one factor alone as being sufficient to sustain a conviction pursuant to Code § 18.2-200.1. For example, in Holsapple v. Commonwealth, 266 Va. 593, 587 S.E.2d 561 (2003), Holsapple made false statements inducing the victim to advance money, then used the advanced funds for his personal use. In finding the evidence sufficient, the Court explained that Holsapple undertook a construction project and accepted an advance of money with full knowledge that he potentially would be unable to complete the project. Id. at 603, 587 S.E.2d at

- 5 -

567. Similarly, in Norman, the appellant made false statements inducing the victim to advance money, converted the money to his personal use when required to place it in escrow, and never performed the work under the parties' contract. Norman, 2 Va. App. at 520-22, 346 S.E.2d at 46. This Court found that "[appellant's] failure to contact [the victim] when he realized that he would be financially unable to perform the construction was an additional circumstance upon which the jury could have relied" in finding fraudulent intent. Id. at 521, 346 S.E.2d at 46.

Other circumstances of fraudulent intent are found in Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 547 (2002), where a contractor received "advances for supplies that were never purchased" and failed to begin work on the project. In comparison, this Court found no fraudulent intent where a defendant remained in contact with his client, giving him reasons for delay and assurances that the project would be completed. Boothe v. Commonwealth, 4 Va. App. 484, 491, 358 S.E.2d 740, 745 (1987).

Appellant suggests this case is similar to Klink, 12 Va. App. 815, 407 S.E.2d 5. There, this Court found no fraudulent intent where appellant obtained an advance from the homeowners, then simply failed to perform the contract. Id. at 816, 407 S.E.2d at 6. After giving appellant half of the contract price as an advance on the day after entering into the contract, the homeowners expected appellant to begin work the following week. Id. When appellant did not begin work or contact the homeowners, the homeowners became concerned and started to call appellant two to three times a day. Id. This Court found there was no evidence of false statements to induce the homeowners into entering the contract, and appellant's behavior did not give rise to an inference of fraudulent intent. Id. at 819, 407 S.E.2d at 8. The Court stated, "[appellant's] failure to perform the agreement or to return the advance was equally likely to have been caused by his poor management, financial distress or both." Id.

We find Rader instructive. The appellant in Rader, similar to appellant here, represented to the homeowners that he needed an advance of funds for the specific purpose of procuring specialty windows. Rader, 15 Va. App. at 327, 423 S.E.2d at 209. The homeowners gave Rader the funds, but Rader never ordered the windows. In fact, Rader never applied the money to any work on the home. Id. at 330-31, 423 S.E.2d at 210-11. This Court explained, "Rader's representations and conduct, *taken together*, demonstrate fraudulent intent." Id. at 330, 423 S.E.2d at 210 (emphasis added). The court added that appellant's promise of completing certain jobs and not doing so, not ordering the windows and doors, failing to apply any of the advance to further work on the home, failure to obtain a building permit, and lack of communication with the homeowners proved that Rader acted with fraudulent intent. Id. at 331, 423 S.E.2d at 212. Thus, the Rader Court considered more than just Rader's false representation that he needed the money to pay for the windows in finding the evidence sufficient.

In this case, the evidence proves appellant made a false representation to S.S., received an advance of funds from her, and did not complete the work. However, appellant began work on the project and completed a substantial amount of the contract. He removed and installed the ceiling drywall in the kitchen. He removed and partially installed new wiring and hookups connections in kitchen. He cleaned and painted the existing kitchen walls, as well as installed a new vinyl floor covering after replacing the flooring and floor joists. Evidence shows that after entering into the contract, appellant discovered termite damage to the floor joists in the kitchen. Although the contract did not provide for replacing the joist, appellant did so.[2] He also renovated the bathroom, although he neglected to mount the bath towel racks. He replaced the living room floor, and installed carpet in the dining room, although it was the wrong color. It is uncontroverted that after appellant received the last advance in September 2005, he continued to

_____

[2] We note that appellant did not present S.S. with a change order for this extra work.

work on the project. The record indicates that he laid carpet in 2007, and his son also continued to work on the house well into 2007. Also, most of the flooring work was performed after the 2005 advance.

While the evidence was in dispute as to the terms of the contract, S.S. acknowledged that appellant performed additional work on her house exceeding the terms of the contract. Indeed, the trial court found that "there were more things to be done; at least it was from the evidence more and more, more things needed to be done than what was in the estimate of the house to do work that was never contracted for."

Unlike Holsapple, Mughrabi and Norman, appellant here made substantial progress in completing the renovations. Appellant also stayed in communication with S.S. directly and through her attorney. In her letter to him, S.S. acknowledged that they had remained in contact, and S.S.'s lawyer recognized that appellant continued to work at the house, although at a slow pace. In comparison to Norman and Rader, appellant here did not misappropriate the advanced funds; no evidence suggests he did anything with the money except apply it to the contract that inured to S.S's benefit.

The Commonwealth, on appeal, argues that no evidence supports appellant's position that he used the $1,500 to purchase other materials for S.S.'s residence. However, the trial court did not reject appellant's claim at trial. In fact, the Commonwealth, at trial, never argued any misappropriation of the money. It is apparent from the trial court's ruling that it made no finding that appellant misappropriated the $1,500 for his personal use. The court based its ruling solely on appellant's misrepresentation that he purchased the cabinets and the time frame involved.

It is apparent from the record that appellant's performance and progress were below expectations. However, we find the evidence as a whole militates against the conclusion that appellant obtained the $1,500 from S.S. with a fraudulent intent and shows, on the other hand,

that appellant was working, albeit leisurely, towards completing the contract. On this record, we find appellant's false representation, and his failure to timely complete the project, are the sole factors indicative of a fraudulent intent. Bearing in mind our standard of review, we find, as a matter of law, that these factors alone are insufficient to prove appellant possessed a fraudulent intent at the time he received his third draw from S.S. As we concluded in <u>Klink</u>, we find here that appellant's failure to complete the project equally likely to have been caused by his poor management, financial distress or both. <u>Klink</u>, 12 Va. App. at 819, 407 S.E.2d at 8.

CONCLUSION

We conclude that the record does not support a finding that appellant obtained the advance from S.S. with fraudulent intent. Accordingly, the judgment of the trial court is reversed.

<u>Reversed and dismissed.</u>